THOMAS J. POPE et al., Respondents, *v.* GEORGE A. PORTER et al., Appellants.

The broker's memorandum of a contract sale between the parties stated that plaintiffs had sold to defendants "Scotch pig iron to arrive as specified below, * * * five hundred tons of Coultness pig iron * * * to be due here in April next; five hundred tons of Caulder's pig iron * * * to be due here in March next." Plaintiffs made default as to the Caulder's iron but were ready and offered to perform as to the Coultness, which defendants refused to accept. In an action to recover damages, *held*, that plaintiffs were not entitled to recover; that the vendees were not compelled to accept a part performance in the inverse order of the contract, but only according to its terms, and as the plaintiffs had made default at the outset, defendants had a right to rescind the whole contract.

(Argued April 13, 1886 ; decided June 1, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 19, 1884, modifying, and affirming as modified, a judgment in favor of plaintiffs, entered upon a verdict.

This action was brought to recover damages for an alleged breach on the part of defendants of a contract of purchase and sale of a quantity of pig iron.

The substance of the contract, and the material facts are stated in the opinion.

*George F. Comstock* for appellants. The seller of goods, to arrive by sea, must deliver the identical goods described in the contract, and cannot substitute other goods although of the same kind and value. In case of non-arrival within the specified time, the seller may reject them and cannot be required to accept other goods to which the contract has no relation, and he may rescind the whole contract. (*Russell* v. *Nichol*, 3 Wend. 112; *Hill* v. *Blake*, 97 N. Y. 216.) A single contract cannot be resolved into different and independent parts, and each part treated as if it stood alone, on the mere ground that it might be the subject of a separate contract. (*De Beersky* v. *Paige*, 10 N. Y. 537.; *Crawford* v. *Crawford*, 10 Johns. 253; *Allard* v. *Greesert*, 61 N. Y. 1; *Cook* v. *Millard*, 65 id. 357.) A statement descriptive of the subject-matter or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, in the sense in which that term is used in insurance and maritime law, that is to say, a condition precedent, upon the failure or non-performance of which, the party aggrieved may repudiate the whole contract. (*Behn* v. *Burness*, 3 B. & S. 751; *Bowes* v. *Shand*, 2 App. Cas. 455; *Lowber* v. *Bangs*, 2 Wall. 728; *Davison* v. *Von Lingen*, 113 U. S. 40; *Mersey Co.* v. *Naylor*, App. Cas. 434, 439.)

*W. W. Niles* for respondents. It is competent to establish an excuse for the non-performance of a contract in point of time, by showing that the defendants specifically requested the delay, and such proof is not immaterial. (*Kansas R. R. Co.* v. *McCoy*, 8 Kans. 538.) The time of performance of a written agreement may be extended by a subsequent agreement, by parol. (*Dillon* v. *Masterson*, 39 N. Y. Sup.

Ct. 133; *Am. Cor. I. Co.* v. *Eisner*, 39 id. 200; *Canal Co.* v. *Ray*, 101 U. S. 522; *Niblo* v. *Binsse*, 3 Abb. Ct. App. Dec.) It was both material and competent to prove the amount realized on the sale of the iron after it had been established .that it was sold on notice and for the best price that could be obtained, and for its full market value. (*Dustan* v. *McAndrew*, 44 N. Y. 72.) Long before the time for the shipment or delivery of the " Coltness" the defendants had relieved the plaintiffs by a positive refusal to receive any iron under the contract. (*Dustan* v. *McAndrew*, 44 N. Y. 72; *Plympton* v. *Elevating Co.*, 55 id. 480; *Blauvelt* v. *Baker*, 58 id. 611; *Skinner* v. *Tinker*, 34 Barb. 333.) That the contract is divisible appears from its terms and is well settled. (*Tipton* v. *Feitner*, 20 N. Y. 423; *Sawyer* v. *C. N. R. Co.*, 22 Wis. 403.) Even if the parties had some particular lot of iron in mind when the contract was made (which they did not) unless the delivery had been confined to that by its terms, they were only required to deliver the same kind and quality. (*Taussig* v. *Hart*, 58 N. Y. 425; *Levy* v. *Loeb*, 85 id. 370.) In this case the iron having been refused on the specific ground that the defendants were entitled to the " iron on the Pryor." No other objection is now available. (*Carman* v. *Pultz*, 21 N. Y. 547; *Duffy* v. *O'Donovan*, 46 id. 223; *Coleman* v. *First Nat. Bank*, 53 id. 392.)

FINCH, J. The material terms of the contract between the parties, as written in the broker's memorandum, are as follows: " Sold to the following named parties Scotch pig iron to arrive as specified below.    *    *    500 tons of Coltness. pig iron at 36 per ton for shipment, to be due here in April next. 500 tons of Caulder pig iron at 34 per ton for shipment, to be due here in March next. Payable on arrival here by four months' note, indorsed by the above-named parties, with interest added at 6 per cent."

A broker often, in the haste of business and in the effort at brevity, will draw ambiguous contracts, and the one before us is an instance and example of such want of care and accuracy.

Whether it is an entire contract or divisible into two separate or independent agreements; whether it sold specific iron to be shipped at a precise time, or merely iron of the stipulated brand; and whether payment was to be made in installments by a four months' note at each arrival, or by one note when all the iron had arrived, were some of the questions which the memorandum left open for dispute. In the litigation which ensued, the vendors recovered of the vendees for a refusal to accept both lots of the iron. On appeal the General Term decided that there could be no recovery for the Caulder iron, upon the ground that the plaintiffs were themselves in default, but that the contract was divisible, and a recovery could be had for the Coltness iron, as to which they were not in default. The judgment was, therefore, reversed, unless the plaintiffs should stipulate to deduct from their recovery the amount awarded on account of the Caulder iron, in which event the judgment as modified should be affirmed. The plaintiffs stipulated and contented themselves with the modified judgment. From that moment the adjudication as to the Caulder iron became indisputable so long as the General Term judgment should stand, and upon this appeal devolves upon the respondents, who seek to sustain that judgment, the duty of demonstrating that it can be correct consistently with the default adjudged by the same judgment as to the Caulder iron. By their stipulation the plaintiffs assented to the decision against them in order to retain the balance in their favor, and, for the purposes of this appeal, must be held to concede that there was default as to the Caulder iron. Whether the consequent right of withdrawal from the contract extended to all the iron and to the entire contract in all its parts, or was limited simply to the Caulder iron is thus the only question presented for our consideration.

The contract, in its first sentence, certifies the sale of " Scotch pig iron to arrive." It specifies later the quantity and brands, and dates of arrival, but it remains one entire contract for the sale of one thousand tons of the iron, half of one brand and half of the other, one portion to arrive in March and one in

April. The purchasers were individuals, one representing a particular corporation and the others a different one, each of which needed the iron in some proportions for their manufacturing purposes. The parties might have bought separately, each taking a smaller quantity and according to their several needs, but they chose, as they had a right to do, to combine in a single purchase of the entire quantity needed by both. Payment was to be made by note at four months, upon the arrival of the iron. If this means upon the final arrival of all the iron to be paid for by a single note, then there is no question that complete delivery of the whole purchase was a condition precedent to the right to demand payment. But the respondents insist that a note was to be given upon each arrival, and, therefore, that both delivery and payment were to be in installments, and so the contract was in its nature divisible, and performance of any component part entitled the vendor to compensation for that part. If the construction of payment due upon each arrival be correct, the contract was "divisible" in the sense in which that word is applied to cases of a particular character and depending upon peculiar circumstances. If the plaintiffs had shipped the five hundred tons of Caulder iron for arrival in March, and it had been delivered to the defendants, who had accepted it, they would have been bound to pay for that iron irrespective of a possible or actual default thereafter as to the Coltness iron. But this because of a part delivery on one side and a part acceptance on the other, which is in accordance with the contract and permitted by its terms. That doctrine, however, does not at all reach or cover a case like the one before us. Here there is a breach of the contract at the beginning; a failure to perform at the outset; and that breach justifies a rescission by the vendee. But a rescission of what? Obviously, of the entire contract. It must be that or nothing, since there are not two independent and separate contracts, one of which may be broken without peril to the other, but there is a single contract which may be rescinded at the moment of a breach, so far as it remains wholly unperformed on both sides. The cases which seem to have misled the

court below are founded upon peculiar equities growing out of the form of contract. They contemplate and require a performance in separable parts or divisions, and where the vendor delivers an agreed proportion, which the vendee accepts, and payment therefor becomes immediately due, the right to recover is at once complete, and is not forfeited by a later default. The contract in such case is called divisible or distributive, and the language is not objectionable if correctly understood and applied. The right of rescission or of abandonment, where such a contract has been wholly performed on one side as to one of its separable parts, and that performance accepted on the other is lost and cannot be regained, for the right to the payment reserved has fully accrued and does not depend upon further conditions. Practically, by the divisible form of the contract, and the joint act of the parties in delivery and acceptance, the earlier stipulation is cut off and separated from the later, but nothing of the kind is possible where the vendor is in default at the outset. The vendee is not compelled to accept a part performance in the inverse order of his contract, but only according to its terms, and where, at its initial point, the vendor is in default, the right to rescind or abandon belongs to the vendee, and necessarily and justly must apply to the whole contract remaining unperformed. Otherwise the one contract is split into two, each independent of the other. Substantially, this doctrine has been recently decided. (*Nowington* v. *Wright*, 115 U. S. 188.) The reasoning of that case seems to us accurate and decisive, and we follow it without hesitation. The order for a new trial, which we think it our duty to make, will leave open the questions of fact as to plaintiffs' default.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.