(Decided 16th March, 1893.)

---

HENRY J. McGRATH, trading as H. J. McGRATH & COMPANY *vs.* GEORGE A. GEGNER.

*Rescission of Contract—Measure of Damages for Breach of Contract—Waiver—Lawful tender—Nominal damages.*

The plaintiff agreed to buy of the defendant all the oyster shells made by him and H. for the season beginning the 1st of September, 1891, and ending the first of May, 1892, and to pay on the first day of each and every successive week for the shells delivered during the previous week. The contract contemplated the sale of at least two hundred thousand bushels of shells, to be delivered daily during a period of eight months. After the delivery of about seventy-five thousand bushels of shells. the defendant on the 28th of December, 1891, notified the plaintiff that the contract was at an end, on account of his failure to make

the weekly payments, and refused to deliver to him any more shells. It appeared that in October the weekly bill sent by the defendant was endorsed: ·"Please send money for these bills promptly," and that on the bill of the 7th of December, was endorsed: "Terms cash every Monday;" and in a letter to the plaintiff the defendant notified him that unless the weekly bills already due were paid at once, the defendant would refuse to allow him to take away any more shells. No objection was made by the plaintiff to the defendant's construction of the contract, nor to his right to annul it upon plaintiff's failure to make the weekly payments. HELD :

That the weekly payments were meant and understood by the parties to be of the essence of the contract, and, the plaintiff having failed time and again to make these payments according to the agreement, the defendant had the right to put an end to the contract.·

If there was a breach of contract on the part of the defendant in refusing to deliver any more shells, the plaintiff was entitled to recover as damages the difference between the contract price to be paid for the balance of the shells and the market price at the time or times when the shells were to be delivered.

Assuming that there had been a breach of the contract by the plaintiff, instructions offered by the defendant that did not submit to the jury to find whether such breach had not been condoned or waived by him, were properly refused.

A tender by the plaintiff on the 28th of December, of his check, in payment of the weekly bills for the 14th and 21st of December, constituted a lawful tender, he having been in the habit of making payment for the weekly deliveries by checks, and the tender being refused not because it was made by check instead of lawful money, but because the defendant had declared the contract to be at an end, and had in fact sold the balance of the shells to be made by him during the oyster season to another person.

If there was no difference in fact between the contract price and the market price at the time the shells were to be delivered, and the plaintiff thus sustained no actural loss by the breach of the contract, he was still entitled to nominal damages.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*— The following prayers, offered by the plaintiff were granted by the Court (HARLAN, J.):

1. If the jury believe that the plaintiff and defendant entered into the contract given in evidence, and that the plaintiff performed his part of said contract, except in such particulars as non-performance by him was condoned, or performance by him prevented by the defendant, and that the defendant broke said contract, then their verdict must be for the plaintiff.

2. That there is no evidence in the cause legally sufficient to go to the jury that the defendant had a right on the 28th day of December, 1891, to rescind the contract offered in evidence in this case, and their verdict must be for the plaintiff.

5. If the jury find for the plaintiff, the measure of damages is the difference between the contract price ($\frac{3}{4}$ c. per bushel, oyster measure) for the number of bushels used during the season, commencing September 1st, 1891, and ending May 1st, 1892, by H. J. McGrath and Company and H. F. Hemmingway and Company (211,899 bushels), and not delivered to the plaintiff, and the market price in Baltimore of similar shells at the date of their delivery to plaintiff according to the contract, and this date of their delivery is to be taken, as to as many of said shells as the jury may believe from the evidence that H. J. McGrath and Company and H. F. Hemmingway and Company could, with reasonable effort, put in piles upon the same ground as they had shells piled upon during the previous season, to be the spring and summer (before July 15th), of 1892, and as to the balance of said shells to be the date when they were shucked or used. And the jury may add to the amount so found any sums received by H. J. McGrath for shells sold by him between September 1st and December 28th,

1891, (if they shall find that said McGrath received any such sums), provided, the jury further find that the shells so sold had been billed to the plaintiffs, and paid for by them.

The defendant offered the four following prayers, which were rejected by the Court:

1. That in order to entitle the plaintiff to recover, he must show that he has performed all his part of the con-. tract, or has been prevented from performing it by the defendant.

2. That the offer by the plaintiff of the check given in evidence was not a legal tender, and that the plaintiff is not entitled to rely upon such offer as a compliance by him with his duty to pay according to the contract.

3. That if the jury shall find from the evidence that the plaintiff executed the contract sued upon, in which contract he agreed that he would on the first of every week, commencing September 7th, 1891, pay the defendant one-half a cent per bushel for all shells made by him and H. F. Hemmingway and Company, for the previous week, and also agreed that he, the plaintiff, would constantly keep boats at the docks of H. J. McGrath and Company and H. F. Hemmingway and Company so as to keep the houses clear of shells, and shall also find that the said plaintiff did not pay the defendant in the manner and at the time agreed, and did not constantly keep boats at the docks, so as to keep the houses clear of shells, then their verdict must be for the defendant.

4. That if the jury shall find from the evidence, that at the time when the defendant refused to allow the plaintiff to have any more shells, and the said plaintiff knew that he could get no more shells from the defendant, and shall further find that at that time, namely, December 28, 1891, the plaintiff could have gone into the market and purchased shells at the same or less price than he had agreed to pay the defendant, then

they shall find that the plaintiff suffered no damage, and their verdict must be for the defendant.

The defendant excepted specially to the granting of the plaintiff's fifth prayer, because the same was calculated to mislead the jury, and because there was no sufficient evidence in the case upon which said instruction could be based.

To the granting of the plaintiff's prayers and the rejection of his own prayers, the defendant excepted. Judgment was entered on a verdict in favor of the plaintiff for $487.39, and the defendant appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*Thomas Ireland Elliott,* for the appellant.

*Alfred S. Niles,* and *Oscar Wolff,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

We cannot agree with the Court below as to the construction of the contract in question, and for a breach of which this suit was brought. The plaintiff agreed to buy of the defendant all the oyster shells made by him and H. F. Hemmingway, for the season beginning 1st September, 1891, and ending May 1st, 1892. He agreed that boats should be kept at the docks of the defendant constantly, so as to keep the oyster houses clear of shells, and on these boats the shells were to be delivered until the 20th November, 1891. No shells were to be piled on the defendant's premises until about that time, and all shells thus piled were to be taken away by the plaintiff before the 15th July, 1892. The plaintiff further agreed to pay on the first day of each and every successive week for the shells delivered during the previous week. That is to say, all shells delivered during the first week

in September were to be paid for on Monday of the following week, and so on for every week thereafter. Under this contract about seventy-five thousand bushels of shells were delivered between 1st September and 26th December, and on the 28th day of the latter month, the defendant notified the plaintiff that the contract was at an end, and refused to deliver to him any more shells. This suit is brought to recover damages for an alleged breach of the contract, and the defence is that the plaintiff failed to make the weekly payments according to the terms of the contract; and failed also to keep boats at the defendant's docks, so as to clear the houses of the shells. As the defendant in his testimony admits that he did not declare the contract at an end because of the failure of the plaintiff to keep boats at the defendant's docks, it is only necessary to consider whether his failure to make the weekly payment for the shells delivered justified the defendant in refusing to deliver to him any more shells. And this depends upon whether the weekly payments by the plaintiff are to be considered an essential part of the contract. And in considering this question it must be borne in mind, that the contract contemplated the sale of at least two hundred thousand bushels of shells, to be delivered daily during a period of eight months, from the 1st of September to the 1st May following; and further, that the contract provided in express terms for the payment of each week's delivery on the first day of the next week. We cannot suppose for a moment that the defendant meant to give an indefinite credit to the plaintiff, nor even a credit until all the shells were delivered or taken away. On the contrary, looking to the terms of the contract, it seems to us it was the intention of the parties that the weekly payments by the plaintiff should constitute an essential part of the contract. In other words, it was of the essence of the contract. In *Withers vs Reynolds*, 2

McGrath *vs.* Gegner.

*Barn. & Adol.*, 882, where the defendant agreed to supply the plaintiff with straw to be delivered on plaintiff's premises, at the rate of three loads in a fortnight, during a specified time, and the plaintiff agreed to pay thirty shillings for each load so delivered, it was held that according to the true construction of the contract, each load was to be paid for on delivery, and that on the plaintiff's refusal to pay for the straw as delivered, the defendant was not bound to deliver any more. And in *Curtis vs. Gibney*, 59 *Md.*, 131, treating the contract as an agreement on the part of the defendant to consign 10,000 bushels of barley to the plaintiffs, the shipments to be made at different times, and payment to be made after receipt of each shipment, BARTOL, C. J., said: "It is equally clear that, upon his failure to remit to the appellant the proceeds in his hands arising from the sale of the barley, according to the terms of his contract with the appellant, the latter was not bound to make further consignments to him." If there be, however, any doubt as to the intention of the parties from the terms of the contract itself, their subsequent acts and declarations show beyond question that the weekly payments to be made by the plaintiff constituted an essential part of the contract now before us. So early as October 12th, we find the weekly bill sent by the defendant to the plaintiff endorsed, *"Please send money for these bills promptly."* Again on the bill of December 7th, we find the following endorsement: *"Terms cash every Monday."* And in his letter dated November 27th, the defendant says: "Your contract reads that you are to pay us weekly, and you are no doubt aware of the fact that you have been violating that part of it." And in this letter he notifies the plaintiff that unless the weekly bills already due are paid at once he will refuse to allow him to take away any more shells. Again in his letter of 7th December, he

insists that the weekly bills shall be "paid promptly every week as per agreement." And finally, by letter of December 9th, he notifies the plaintiff that by reason of his failure to pay the bills weekly according to agreement, the contract between them is at an end. No objection whatever was made by the plaintiff to the defendant's construction of the contract, nor as to his right to annul it upon plaintiff's failure to make the weekly payments. On the contrary, upon the receipt of the letter of the 7th December, the plaintiff paid at once all the bills due at that time, and upon their payment the defendant continued to deliver the shells. On the 28th of December however having failed to pay the weekly bills for the 14th and 21st of December, the defendant sold the shells to another person at the same price. In the latter part of that day the plaintiff tendered to the defendant his cheque for $112.47, being the amount due for bills of December 14th and 21st; but having sold the shells to another person before the tender was made, he refused to accept the same. It is clear therefore that the weekly payments were meant and understood by the parties to be an essential part of the contract, and the plaintiff having failed time and again to make these payments according to the terms of the contract, the defendant had the right to put an end to the contract, and to refuse to deliver any more shells under it to the plaintiff. And this being so, there was error in granting the plaintiff's second instruction. There is evidence, it is true, tending to show that the defendant had condoned or waived the default on the part of the plaintiff, and this question was properly submitted to the jury by the plaintiff's first instruction.

As to the rule in regard to the measure of damages, there cannot be, it seems to us, any difficulty in regard to this question. In an action on a contract of this kind, the damage is the actual loss sustained by the plaintiff

McGrath *vs.* Gegner.

from the breach of the contract; and so far as money can do it, he is to be placed in the same situation as if the contract had been performed. And in estimating this loss the rule ordinarily is the difference between the contract price and the market price at the time agreed upon for the delivery of the goods and chattels sold. Now in this case the defendant had delivered about seventy-five thousand bushels of shells; and if there was a breach of contract on his part in refusing to deliver any more shells, then the plaintiff was entitled to recover as damages the difference between the contract price to be paid for the balance of the shells and the market price at the time or times when the shells were to be delivered. *Pinckney vs. Dambmann Bros. & Co.*, 72 *Md.*, 184; *Benjamin on Sales, sec.* 882.

And the Court in granting the plaintiff's fifth prayer, as we understand it, so instructed the jury. At the same time we deem it proper to say that the prayer is encumbered with a good deal of unnecessary verbiage, a matter always to be avoided in the trial of all causes.

As to the several instructions offered by the defendant, these were all properly rejected. The first and third were properly rejected, because if it be assumed that there had been a breach of the contract by the plaintiff himself, these instructions do not submit to the jury to find whether the breach or breaches by him had been condoned or waived by the defendant.

The second instruction presents the question whether the tender made by the plaintiff on the 28th of December of his cheque for $112.47 in payment of the weekly bills for the 14th and 21st December, constituted a lawful tender. He had been in the habit of making payment for the weekly deliveries by cheques, and when the cheque in question was tendered to the defendant he refused to accept it, not because the tender of payment was made by cheque instead of lawful money, but because

McGrath *vs.* Gegner.

he had declared the contract to be at an end, and had in fact sold the balance of the shells to be made by him during the oyster season to another person. And, such being the case, we take it to be well settled that, where a tender is made, whether it be by ordinary bank notes, or by a cheque on a bank, and the tender is refused, not because of the character or quality of the tender itself, but on other grounds, the tender thus made and refused will be considered in law a lawful tender. And for the reason, that all objection to the character of the tender will be considered as having been waived; and for the further reason, that, if objection had been made on the ground that the tender was not made in lawful money, the party would have had the opportunity of getting the money and of making a good and valid tender. *Young vs. Harris,* 2 *Crompton & Jarvis,* 15.

The defendant's fourth prayer was not pressed in argument. If there was a breach of the contract in refusing to deliver the shells to the plaintiff, the latter was under no obligation to go into the market and purchase other shells, even though he might have purchased them at the same or less than the contract price. If there was no difference in fact between the contract price and the market price at the time the shells were to be delivered, the plaintiff, it is true, sustained *no actual loss* from the breach of the contract. But at the same time, even though he failed to prove any *bona fide substantial* loss or damage, he was still entitled to *nominal damages.* Whenever a contract is broken, the law presumes that some damage has been sustained, and if the plaintiff should fail to prove any actual loss or injury, he is still entitled to a verdict for nominal damages. *Feize vs. Thompson,* 1 *Taunt.,* 121; *Embrey vs. Owen,* 6 *Exch.,* 353.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 16th March, 1893.)