ROSS-MEEHAN FOUNDRY COMPANY *v.* ROYER WHEEL COMPANY *et al.*

(*Knoxville.* September Term, 1904.)

**CONTRACT.** To make and deliver castings as required may be terminated as an entirety for failure to make payment for one installment as stipulated.

A contract whereby complainant agrees to make and deliver to defendant for a stipulated period all the castings required, as set out therein, and the defendant agrees to order from the complainant all such castings as may be required during said period, and to pay for each delivery within a stipulated period thereafter, is an entirety, and complainant may terminate such contract on defendant's failure to make payment as therein provided.

See authorities cited in opinion.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—T. M. M'CONNELL, Chancellor.

WILLIAMS & LANCASTER, for complainant.

PRITCHARD & SIZER, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The controversy in this case grows out of a contract entered into on the 28th of March, 1899, between the complainant company and the Royer Wheel Company, by which the first party agreed to make for the second party, from metal patterns to be furnished by the second party, all malleable or other castings required, as set out in the contract, and the second party agreed to order from the first party all such castings as were required by it between the first day of September, 1899, and the first of September, 1903, and to pay for such castings as were delivered under the contract in sixty days from the date of each delivery, or in cash within ten days thereof with a discount of two per cent.

Soon after the making of the contract, disagreements between the parties thereto arose. The Royer Wheel Company complained of delays in the delivery of castings, as well as of defects in some of those delivered, and the foundry company complained of the defendant company for its failure to make payment for deliveries made. Finally, upon the continued delay on the part of the Royer Wheel Company for a term of about nine months to make payment for castings received by it, the Ross-Meehan Company notified the Royer Wheel Company that it regarded this nonpayment as such a breach of the contract as relieved it from the obligation to make any future delivery. The present bill was soon thereafter filed

upon an open account to recover the value of these castings delivered. The Royer Wheel Company filed an answer, in which it set up the contract, and insisted that the complainant had failed to make deliveries as were required by its terms; that many of the castings furnished were defective and that by its renunciation of the contract the complainant company had inflicted serious losses upon the defendant in view of the advanced price of such castings which it would have now to obtain in the open market. These alleged damages the defendant set up by way of recoupment. The case went to trial, and the chancellor, treating the continued failure on the part of the defendant company to pay as a breach going to the whole contract, released the complainant company from all obligations to make future deliveries, and gave it a decree for the full value of the castings covered by its account, with interest, less a small sum allowed the defendant company by way of recoupment. Upon reference of the cause to the court of chancery appeals, this decree was affirmed.

That court finds as facts that the complainant company substantially complied with the obligations imposed upon it by the contract, and that only a short time before the complainant company notified it of a purpose to rescind because of the long failure to pay for castings delivered the defendant company expressed to the complainant entire satisfaction with the manner in which it had performed its part of the contract. Under this finding the only question really open is, did com-

plaintant have a right to rescind, or, rather, to decline to go on with, the contract, upon the mere failure of the defendant to make payment for castings delivered as provided therein?

The contract in question, it will be observed, covers a period of three years, to be executed, however, in installments; that is, the castings were to be made and delivered by the complainant in lots as ordered or required by the defendant, and the defendant was to pay for each delivery in the mode set out in the ˙opening paragraph of this opinion.

The rights of the respective parties under such a contract had been made a subject of much discussion, which resulted in discordant opinions in England. By some of the courts of that country the contract was regarded as severable or divisible, so that a failure to pay one or more installments due on delivery would not authorize the other party to rescind the contract, as for such failure he could obtain adequate compensation. The English cases are grouped and analyzed by Mr. Benjamin in his work on Sales, and it would seem that some of the earlier of these cases were decided in view of this principle. Others, however, treated such a failure as evidentiary in character, leaving the question open for the court or jury whether by such failure the party guilty intended to abandon the contract and set the other party at large. This rule, after more or less fluctuation, seems to have been at last established so as to be beyond fur-

ther controversy in the leading case of *Mersey Steel &
Iron Co.* v. *Nailor* [1884], 9 App. Cas., 434.

In America it will be found that the courts are by no
means in accord.   However, in the now leading case in
this country of *Norrington* v. *Wright,* 115 U. S., 188, 6
Sup. Ct., 12, 29 L. Ed., 366, the supreme court of the
United States has announced the rule. that, where a
seller has provided in a contract with a buyer for a suc-
cession of deliveries, a failure upon the part of the seller
to make one or more of the earlier deliveries, went to
the whole contract, and relieved the buyer of all obliga-
tion to accept.   In that case the facts were that Nor-
rington sold to Wright & Son 5,000 tons of iron rails to
be shipped from a European port or ports, at the rate of
about 1,000 tons per month beginning with February,
1880, but the whole contract to be shipped before Au-
gust 1, 1880.   Norrington shipped 400 tons by one ves-
sel in February, 885 tons by two vessels in March, 1,571
tons by five vessels in April, 850 tons by three vessels in
May, 1,000 tons by two vessels in June, and 300 tons
by one vessel in July, and notified the Wrights of each
shipment.   The Wrights received and paid for the Feb-
ruary shipment upon its arrival in March, and in April
gave directions as to what wharves the March shipment
should be discharged, but on May 14, having been for
the first time informed of the amounts shipped in Feb-
ruary, March, and April, gave the agent of Norrington
written notice that they should decline to accept the
shipments made in March and April, because none of

them were in accordance with the contract. Thereafter tender of delivery of other cargoes shipped by Norrington to fill this contract was made by his agent to the Wrights, which they declined to accept upon the ground that the earlier shipments had not been made in accordance with the contract, and they thereupon announced their purpose to rescind the same. Suit was brought by the Norringtons, and they sought to recover for a breach of this contract, placing the right of recovery upon two grounds: "(1) That under the contract Norrington had six months in which to ship the 5,000 tons, and any deficiency in the earlier months could be made up later, provided that the defendant would not be required to take more than 1,000 tons in any one month. (2) That, if this was not so, the contract was a divisible contract, and the remedy of the defendant for the default in any month was not by rescission of the whole contract, but only by deduction of the damages caused by the delays in shipment on the part of the plaintiff." To these contentions, ruled against them in the trial court, and renewed in the supreme court of the United States, this latter court responded in an elaborate opinion, reviewing, among others, English cases for the purpose of reconciling these latter with the conclusion reached by that court. As to the first of these contentions the court said: "In the contracts of merchants time is of the essence. The time of shipment is the usual and convenient means of fixing the probable time of arrival, with the view of providing funds to pay for

the goods or fulfilling contracts with third persons. A statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty in the sense of which that term is used in insurance and maritime law; that is to say, a condition precedent upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract. *Behn* v. *Burness,* 3 B. & S., 751; *Bowes* v. *Shand,* 2 App. Cas., 451; *Lowber* v. *Bangs,* 2 Wall., 728, 17 L. Ed., 768; *Davison* v. *Von Lingen,* 113 U. S., 40 Sup. Ct., 346, 28 L. Ed., 885."

To the contention that the contract was severable the court said: "The contract sued is a single contract for the sale and purchase of 5,000 tons of iron rails, shipped from a European port or ports for Philadelphia. The subsidiary provisions as to shipping in different months, and as to paying for each shipment upon its delivery, do not split up the contract into as many contracts as there shall be shipments or deliveries of so many distinct quantities of iron. . . . The seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity or to require him to select out of a greater quantity; and when the goods are to be shipped in certain proportions monthly the seller's failure to ship the required quantity in the first month gives the buyer the same right to rescind the whole contract that he would have had if it had been agreed that all the goods should have been delivered at once." Concluding this branch of the case,

the court said: "The plaintiff denying the defendants' right to rescind, and asserting that the contract was still in force, was bound to show such performance on his part as entitled him to demand performance on their part, and, having failed to do so, cannot maintain this action." It is true that this case does not present the exact question which is now being considered, but it furnishes a strong analogy, and we think announces the principle, which, if sound, should be controlling in the case at bar. It does determine that a contract like the one in controversy is an entirety, and that a breach of one of its conditions, even if that breach should occur in the earlier steps of its execution, may be availed of, without more, as a ground of a renunciation of the contract by the other party. The force of the analogy, as well as the closeness of the application of the authority to the present case, would be more apparent if we had here as the party complaining the Royer Wheel Company insisting upon a recovery for the breach of a contract to deliver, when it was conceded that this latter company had failed to comply with its part of the contract in making payment for deliveries already made. Upon such a record there is no doubt, upon the authority of the Norrington case, that such a bill would be dismissed. So closely allied are the questions as to the duty and default of buyer and seller in contracts providing for delivery of payment in installments, where the breach on the one part or the other arises, that Mr. Mechem in his admirable work on Sales treats them to-

gether. In section 1140 he says: "The failure of the
seller may be in not delivering an installment either in
the time or the amount or the quantity agreed upon.
The failure of the buyer may be in not paying an install-
ment in the time or the amount or the manner agreed
upon. The question of the duty and default of the buyer
may belong more appropriately to a subsequent chapter,
but, inasmuch as the principle seems substantially the
same in either case, and the default of one leads often
to the alleged default of the other in such a way as to
commingle both questions almost inextricably, both will
be considered together." That author, after putting
the question, "Does the default of one party in deliver-
ing or paying one installment justify the other in treat-
ing the contract as at an end, or must the latter con-
tinue performance on his own part, relying on his action
for damages to compensate him for the breach by the
former?" proceeds then to discuss both English and
American authorities. In summing up as to the En-
glish cases, he finds that the rule prevailing there is the
one announced in the Mersey Steel case, before referred
to. As to the American cases, in section 1148 he says,
though not in harmony, "that the view that the failure
of either party to perform an essential term of the con-
tract gives to the other the right to rescind that con-
tract is sustained by the clear weight of American au-
thority." As enforcing this view the author refers to
*Norrington* v. *Wright,* supra; *Pope* v. *Porter,* 102 N. Y.,
366, 7 N. E., 304; *McGrath* v. *Gegner,* 77 Md., 331, 26

Atl., 502, 39 Am. St. Rep., 415. *Pope* v. *Porter* was a case in which there was a contract for the delivery of iron in two installments, and the seller made default in the delivery of the first, but offered to deliver the second, which the buyer refused to accept. The court held that the first failure of the seller justified the refusal of the buyer. "Here," said the court, "there is a breach of the contract at the beginning, a failure to perform at the outset, and that breach justifies a rescission by the vendee. But a rescission of what? Obviously of the entire contract. It must be that or nothing, since there are not two independent and separate contracts, one of which may be broken without peril to the other, but there is a single contract, which may be rescinded at the moment of the breach, so long as it remains wholly unperformed." The case of *McGrath* v. *Gegner,* supra, was where the same rule was applied in favor of the seller upon a default in payment by the buyer. The contract there repudiated was for the sale of a lot of shells to be delivered in weekly installments, each of which was to be paid for within a week following its delivery. The buyer made default, and the seller repudiated the contract. In disposing of the case the court said: "It is clear that the weekly payments were meant and understood by the parties to be an essential part of the contract, and, the plaintiff having failed time and again to make these payments according to the terms of the contract the defendant had a

right to put an end to the contract, and to refuse a delivery of any more shells under it to the plaintiff."

This view is also supported by *Kokomo Strawboard Co.* v. *Inman,* 134 N. Y., 92, 31 N. E., 248; *Winchell* v. *Scott,* 114 N. Y., 640, 21 N. E., 1065; *G. H. Hess Co.* v. *Dawson,* 149 Ill., 138, 36 N. E., 557; *Providence Coal Co.* v. *Coxe,* 19 R. I., 380, 35 Atl., 210; *Rugg* v. *Moore,* 110 Pa., 236, 1 Atl., 320; *Branch* v. *Palmer,* 65 Ga., 210; *City of Baltimore* v. *Schaub,* 96 Md., 534, 54 Atl., 106.

On the other hand, New Jersey, in *Blackburn* v. *Reilly,* 47 N. J. Law, 290, 1 Atl., 27, 54 Am. Rep., 159, and other cases; Michigan, in *West* v. *Bechtel,* 84 N. W., 69, 51 L. R. A., 791; and the United States circuit court of appeals for the sixth circuit, in *Cherry Valley Iron Works* v. *Iron River Company,* 64 Fed., 569, 12 C. C. A., 306, and in *Monarch Cycle Co.* v. *Royer Wheel Co.,* 105 Fed., 324, 44 C. C. A., 523—adopt the rule announced in *Mersey Steel & Iron Co.* v. *Nailor,* supra; while the supreme court of Iowa, in *Myer* v. *Wheeler,* 65 Iowa, 390, 21 N. W., 692, held that such a contract was divisible, and that rescission would not be allowed unless the breach went to the whole consideration.

While these authorities are entitled to the highest respect, yet we cannot but think the better reason is with those cases which take the view supported, as is said by Mr. Mechem, by the weight of American authority. It seems to us, as is well remarked by the learned editors of the 4th American edition of Benjamin on Sales in their discussion of this question, that it is man-

Foundry Co. v. Wheel Co.

ifestly unjust "to compel a seller to continue delivering to one who owes for previous deliveries, or to compel a buyer to continue paying to one who has previously defaulted in delivering goods paid for in advance."

We think a rule enforcing a compliance of seller or buyer under these several conditions in order to maintain his right as against the contracting, but defaulting, party, is unreasonable, and a violation of the intention of the parties as manifested in the contract. It is apparent that it was not the purpose of these present parties that complainant should make indefinite deliveries without payment, and it is equally clear that it was not the purpose of the defendant company to make payment except for goods already received. Both parties evidently contemplated that following each delivery the defendant company should execute its paper at sixty days, or else within ten days from such delivery take advantage of the discount and pay cash. Where the defendant company has received deliveries and for months has persistently neglected to pay the sums due on those deliveries it would be a manifest hardship to impose on the complainant the necessity of continued deliveries.

We think the decree of the court of chancery appeals is in all things right, and it is therefore affirmed.