MAY TERM, 1907. 593

Ohio Valley Buggy Co. *v.* Anderson Forging Co.—168 Ind. 593.

## OHIO VALLEY BUGGY COMPANY *v.* ANDERSON FORGING COMPANY.

[No. 20,870. Filed June 6, 1907.]

1. APPEAL.—*Sufficiency of Evidence.*—Only the evidence most favorable to appellee will be considered, where the error assigned is that the evidence does not support the verdict. p. 596.

2. CONTRACTS.—*Instalment Payments.—Time.—When Considered as of the Essence.*—The rule that time is not ordinarily considered as of the essence of a contract, is applicable only in equity cases, and not to actions at law for the recovery of damages for a breach of such contract. p. 598.

3. SAME.—*Sales.—Instalments.—Time.—When Considered as of the Essence.*—At the common law, time is considered as of the essence of a contract of sale, where goods are to be delivered and paid for by instalments. p. 599.

4. SAME. — *Sales. — Instalments.—Failure to Pay.—Recovery.*— Where the vendee contracted to pay the vendor in instalments as the goods were delivered, and the vendee repeatedly and successively failed so to pay for several times, such vendee is not in a position to recover against the vendor for a breach of contract to continue to deliver goods, the vendee having first violated such contract. p. 600.

5. SAME. — *Sales. — Failure to Pay. — Rescission.*—The vendor, who contracted to deliver to the vendee certain goods in instalments, to be paid for within 60 days from the time of the successive deliveries, may rescind such contract, where the vendee repeatedly and continually failed to pay within the time. p. 600.

6. SAME.—*Sales.—Failure to Pay.—Rescission.—Waiver.*—The vendor does not waive his right to insist upon a rescission of his contract to deliver goods to his vendee in instalments, the goods to be paid for within 60 days from the time of the deliveries, the vendee having repeatedly failed to pay, on the ground that, after such rescission, such vendor accepts payment for the goods delivered and on which the vendee was in default. p. 602.

From Madison Circuit Court; *John F. McClure,* Judge.

Action by the Ohio Valley Buggy Company against the Anderson Forging Company. From a judgment for de-

Ohio Valley Buggy Co. *v.* Anderson Forging Co.—168 Ind. 593.

fendant, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Chipman, Keltner & Hendee* and *Frank B. Shutts,* for appellant.

*Bagot & Bagot,* for appellee.

JORDAN, J.—Action by appellant to recover damages from appellee on account of an alleged breach of a written contract. The complaint on which the cause was finally tried alleges that the plaintiff and defendant are both incorporated companies; that on September 24, 1900, these parties entered into a written contract, a copy of which was filed with the pleading, whereby the defendant company agreed to sell and deliver to plaintiff company certain described goods, wares and merchandise, enumerated and specified in .the contract; that the amount and kind of instalment goods and wares ordered at various dates by the plaintiff and shipped to it by the defendant under the contract are all alleged and shown in the complaint; that plaintiff paid for all of these goods, and that said payments were accepted by the defendant; that the defendant, on February 22 and 28, 1901, reaffirmed the original contract, and waived any and all rights to renounce and rescind the contract upon any previous failure to pay for the goods within the time provided therein, and that the defendant recognized and affirmed the obligations of said contract on its part by accepting an order from plaintiff for the goods described in said contract.

The complaint alleges, as a breach of the contract in suit, that the plaintiff, on August 30, 1901, sent an order to the defendant for certain described goods, wares and merchandise, but the defendant, as it appears, refused to furnish these goods and wares, and by reason of its said failure the plaintiff was compelled to go into the open market to obtain the goods, and was compelled to pay for the same

$488.80 more than it was required to pay the defendant for the same goods under the terms and conditions of the contract; that the plaintiff performed "each and all of the conditions and stipulations in said contract provided upon its part;" that, by reason of the defendant's failure to ship the goods ordered as aforesaid, plaintiff has been damaged in the sum of $488.80. Wherefore he demands judgment.

The defendant answered in two paragraphs, the first being the general denial. The second alleges that the plaintiff first broke and violated the contract in suit by repeatedly failing and refusing to make payments for the goods furnished and delivered to it by the defendant under said contract, in this, to wit, by the terms and provisions thereof all goods and merchandise therein embraced were to be paid for within sixty days from the date of shipment; that plaintiff repeatedly and persistently failed and neglected to pay for the goods and wares sold and shipped within the time provided, and continued openly to violate the contract in this respect (here follow numerous specifications of the shipments of goods and wares by the defendant to the plaintiff upon the order of the latter under the contract, which, as shown, it failed and neglected to pay for until long after the expiration of the sixty days, the time within which the payments were to be made); that, by reason of plaintiff's repeated violations of the contract in this respect, the defendant rescinded and repudiated said contract, and not otherwise.

The plaintiff replied to this answer in two paragraphs. The first the general denial. The second set up affirmative matter to show that after the rescission or repudiation of the contract by the defendant it waived all breaches or violations thereof by the plaintiff, and approved, ratified, and confirmed the contract in suit. Upon these pleadings the issues were joined. There was a trial by the court and a general finding in favor of the defendant, and over plaintiff's motion for a new trial, assigning only the statutory

596    SUPREME COURT OF INDIANA,

Ohio Valley Buggy Co. *v.* Anderson Forging Co.—168 Ind. 593.

grounds, judgment was rendered in favor of the defendant.

The only error assigned is based upon the ruling of the court in denying the motion for a new trial. It is argued by counsel for appellant that the decision of the 1. trial court is not sustained by sufficient evidence, and that is the only question presented for review. In determining this question, under a well-settled rule, we are to be controlled by the evidence in the record which is most favorable to the appellee. The contract involved, which was introduced in evidence, was executed by the parties and became effective on September 24, 1900. Therein it is stipulated that

> "The Anderson Forging Company agrees to sell and cause to be delivered, and the Ohio Valley Buggy Company agrees to buy and pay for, the following goods at the prices and terms and conditions herein named, as follows:·
> 4 Bow Japanned Steel Bow Sockets, per set...$38\frac{1}{2}$c
> 3 Bow Japanned Steel Bow Sockets, per set...$32\frac{1}{2}$c
> $2\frac{1}{2}$ Bow Japanned Steel Rams Horn Bow Sockets, per set.............................40c
> Extension Steel Bow Sockets, Japanned, per set.45c
> $3\frac{1}{2}$ Bow Rams Horn 10c per set over price of 4 Bow. Terms sixty days net, or two per cent for cash if paid between the 10th and 15th of the following month for previous months; all goods f. o. b. Cincinnati, Ohio. The Anderson Forging Company guarantee prices against a general decline. All goods guaranteed to be up to standard in quality. Quantity of bow sockets not to exceed 2,500 sets. This contract is void after September 1, 1901."

There are other stipulations and provisions in the contract which are not material to the question here involved, hence they are not set out.

The damages claimed by appellant, under the evidence, are based upon the breach of contract which, as alleged in the complaint and shown by the evidence, occurred on August 30, 1901, and is attributed to appellee's failing and

refusing to furnish to appellant a certain lot of bow sockets ordered by the latter company on that date. Appellee's counsel, however, insist that because appellant violated the contract on its part in repeatedly failing and neglecting to make payments within the terms and provisions of the contract, for the goods sold and furnished thereunder, it rescinded and repudiated the contract long before August 30, 1901; of all of which appellant had notice.

The evidence in the case shows that after the execution of the contract in question the first shipment of goods thereunder was made by appellee to appellant on September 29, 1900. These goods appear to have been paid for on November 13, 1900, within the sixty days. The evidence discloses, however, that after this first shipment some six other separate and successive shipments were made, and in each and all of which appellant was in default in making payments within the time prescribed in the contract. To particularize in this respect, the evidence shows that a shipment of goods made on October 3, 1900, was not paid until February 15, 1901, or 135 days beyond the date of shipment. Goods that were shipped November 1, 1900, remained unpaid until February 15, 1901, 107 days beyond the date of shipment. For goods shipped November 13, 1900, appellant failed to pay until about February 15, 1901, or 94 days after the date of shipment. Goods shipped on November 30, 1900, were not paid for until March 2, 1901, 92 days beyond the date of shipment. Shipments made December 4, 1900, remained unpaid until March 2, 1901, 88 days after the date of shipment. Goods shipped December 18, 1900, were not paid for until March 2, 1901, or 73 days after shipment.

Appellant, as it appears, made and prolonged its default of payments in the face of the fact that appellee was requesting and urging payment for the goods which it had shipped and furnished. Other shipments appear to have been made as follows: January 4, 1901; January 29, 1901;

598    SUPREME COURT OF INDIANA,

Ohio Valley Buggy Co. *v.* Anderson Forging Co.—168 Ind. 593.

February 8, 1901; February 15, 1901. All of these shipments were paid for by appellant on April 1, 1901. The next and last shipment after this was made March 1, 1901, and paid for on the 6th of the following month. After appellant had permitted the bill for the shipment of goods made on January 4, 1901, to run unpaid for eighty-two days, appellee, about March 27, 1901, gave notice of its intention to cancel the contract. Mr. Friedrich, president of appellant company, testified that his company had full notice from appellee that the latter intended to cancel the contract, for the reason that appellant did not pay its bills. The notice received by appellant of appellee's purpose to cancel the contract appears to have aroused appellant to action, and therefore on receiving the notice it promptly paid all of its bills, and by April 6, 1901, all accounts for goods furnished it by appellee appear to have been paid and settled. No other shipments were made by appellee after this payment. On April 24, 1901, it appears that appellant ordered from appellee some bow sockets. This order was not filled. On April 26, 1901, appellee notified appellant that it had actually canceled the contract on account of appellant's violation thereof. Again, on May 24, 1901, appellee, in response to another order from appellant for bow sockets, wrote a letter to the latter, stating therein that as the appellant had violated the contract by not paying its bills when due, as it had agreed, it (appellee) had canceled the contract.

We have here presented under the evidence a question of law which counsel for appellant insist is erroneously decided by the judgment of the trial court. In their endeavor to sustain this view they advance the argument that the time of payment, as fixed by the contract, for the goods and merchandise sold and furnished by appellee was not of the essence of the contract, and that, therefore, appellant's defaults in making payments, as shown by the evidence, did not justify appellee in repudi-

ating or rescinding the contract, or in refusing to furnish the goods and wares in question. It is further argued as a second proposition that if appellant did first violate or break the contract by failing to pay within the prescribed time, nevertheless appellee, under the evidence, must be held to have waived the breach. In answer to the insistence that the time fixed for payments by appellant for each instalment of goods sold and furnished is not of the essence of the contract, it may be said that this principle is not applicable to the case at bar, for it is well settled that it is only in equity or chancery cases where this rule is regarded and applied. This case is an action at common law to recover damages for the breach of the contract here involved. At common law time is of the essence of a contract, and the

3. performance, at the time fixed or prescribed, of the conditions or stipulations therein by the contracting party upon whom such duty rests is indispensable unless waived by said party. The party in default of the performance within the time fixed may, by reason of his default, open the way, or, in other words, give the other party the right, at his election, to rescind the contract or to refuse further to perform the conditions or stipulations therein on his part. It is certainly manifest that the contract in suit imposed upon appellee the obligation to furnish the goods at the prices specified, etc., and likewise imposed upon appellant the obligation to pay for them at the prices fixed within the time stipulated by the contract. These were mutual conditions, a compliance with which the law would exact of each party. It is, under the contract, as much of essence or substance thereof for appellant to pay for the goods within the time stipulated as it is for the appellee to furnish them as therein provided. In support of the above propositions see *Cromwell* v. *Wilkinson* (1862), 18 Ind. 365, 371; *Phillips, etc., Const. Co.* v. *Seymour* (1875), 91 U. S. 646, 23 L. Ed. 341; *Norrington* v. *Wright* (1885), 115 U. S. 188, 203, 6 Sup. Ct. 12, 29 L.

Ed. 366; 2 Mechem, Sales, §§1138, 1140, 1141; *Stephenson* v. *Cady* (1875), 117 Mass. 6, and authorities cited; *Fletcher* v. *Cole* (1850), 23 Vt. 114.

It appears that appellee, before it refused to fill appellant's orders for more goods, had already performed its obligations under the contract by shipping goods to appellant as ordered, but the latter company appears to have repeatedly and successively failed to perform its corresponding duty under the contract by neglecting to pay for same within the time prescribed. Under these circumstances appellee would not be required to continue to comply with the contract by furnishing goods to appellant at the risk of the latter's failure thereafter to comply with the conditions of the contract in making payments as required. Appellant alleged in its complaint that it had performed "each and all of the conditions and stipulations in said contract provided on its part." The evidence, however, falls far short of sustaining these averments, but, on the contrary, clearly shows that appellant first violated the terms of the contract upon its part by failing to pay the bills accruing for the goods purchased until long after the maturity of said bills, although the payments thereof were frequently pressed by appellee. Upon this view of the case, and under these circumstances, appellant, having first violated the contract in this respect, as the evidence shows, is not in a position to maintain an action thereon against appellee for the alleged breach thereof. *Skehan* v. *Rummel* (1890), 124 Ind. 347; *Board, etc.,* v. *Hill* (1888), 115 Ind. 316; *Frankel* v. *Michigan, etc., Ins. Co.* (1902), 158 Ind. 304; 2 Mechem, Sales, §1143.

In the section just cited the author, quoting from Lord Blackburn in the case therein referred to, says: "The rule of law, as I always understood it, is that where there is a contract in which there are two parties, each side having to do something, if you see that the

failure to perform one part of it goes to the root of the contract, goes to the foundation of the whole, it is a good defense to say, 'I am not going on to perform my part of it when that which is the root of the whole and the substantial consideration for my performance is defeated by your misconduct.'"

In *Skehan* v. *Rummel, supra,* this court said: "It is familiar law that where one of the parties to a contract asks its enforcement against the other party thereto, he must be able to show performance on his part, or to offer a legal excuse for his failure to perform."

In *Frankel* v. *Michigan, etc., Ins. Co., supra,* we said: "If the appellant had himself violated the contract without legal excuse, he could not maintain an action upon it."

In Hammond, Contracts, §463, the author, speaking in respect to a contract whereby goods are sold to be furnished or delivered and paid for in instalments, asserts that according to the weight of authority in America the failure of the seller to deliver any one instalment, or a substantial part thereof, according to the contract, entitles the buyer to rescind and refuse to accept further instalments, and that the seller has the right to rescind in case the buyer fails to accept and pay for each instalment. In support of the right of appellee to rescind the contract and decline to furnish to appellant the goods in question, see, in addition to the authorities hereinbefore cited, *McGrath* v. *Gegner* (1893), 77 Md. 331, 26 Atl. 502, 39 Am. St. 415; *Robson* v. *Bohn* (1880), 27 Minn. 333, 7 N. W. 357; *Pope* v. *Porter* (1886), 102 N. Y. 366, 7 N. E. 304; *Hill* v. *Blake* (1884), 97 N. Y. 216; *Rugg & Bryan* v. *Moore* (1885), 110 Pa. St. 236, 1 Atl. 320; *Bennett* v. *Shaughnessy* (1889), 6 Utah 273, 22 Pac. 156; *Reybold* v. *Voorhees* (1858), 30 Pa. St. 116; *King Philip Mills* v. *Slater* (1880), 12 R. I. 82, 34 Am. Rep. 603; *Gardner* v. *Clark* (1860), 21 N. Y. 399; *Bradley* v. *King* (1867), 44 Ill. 339.

In *McGrath* v. *Gegner, supra,* the plaintiff agreed under the contract in suit to purchase from the defendant 200,000 bushels of oyster shells during the season beginning September 1, 1891, and ending May 1, 1892. Under the agreement he was to pay on the first day of each and every successive week for the shells delivered during the previous week. After the delivery of about seventy-five bushels of these shells, the defendant notified the plaintiff that the contract was at an end, on account of the latter's failure to make the weekly payments and he refused to deliver to him any more shells. The court, in that case, in passing upon the right of the seller of the shells (the defendant) to rescind the contract because of the plaintiff's (the buyer's) failure to comply therewith by making weekly payments for the shells delivered as therein provided, held that such payments were meant and understood by the parties to be of the essence of the contract, and the plaintiff having failed time and again to make these payments according to the agreement, the defendant had the right to put an end to the contract.

In regard to the question of waiver by appellee of its right to take advantage of the breaches or violations of the contract in suit upon the part of appellant on the ground that it accepted payment from the latter of the delinquent bills after having notified appellant of its intention to cancel the contract on account of appellant's repeated and continued delinquencies in making payment, it may be said that appellant was liable for the payment of goods which it had received and used, and its duty to pay for them was a continuing one, resting upon it until the bills were paid and satisfied. The breaches or violations upon the part of appellant had already taken place, and there is nothing in the evidence to show that any act of the appellee induced or in any manner gave appellant the right to violate the contract. The money was due and owing to appellee at the time it was paid, and it certainly

had the right to accept what were its dues. The acceptance alone of the money, under the circumstances, was in no manner inconsistent with appellee's existing rights, and could not operate as an estoppel against it, or constitute a waiver of its right to interpose the defense which it has in this action. Bishop, Contracts (2d ed.), §792; 2 Mechem, Sales, §§1070, 1071; *Royal* v. *Aultman & Taylor Co.* (1888), 116 Ind. 424, 2 L. R. A. 526. See, also, *Germania Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392; *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 1 L. R. A. (N. S.) 422, 112 Am. St. 232.

Mr. Bishop, in his work on contracts, on the question of waiver, states the rule as follows: "Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward." Bishop, Contracts (2d ed.), §792.

It follows, under the evidence in this case and the law applicable thereto, that the finding of the court in favor of appellee was a right conclusion, and the judgment is accordingly affirmed.