## ASBURY W. HARTLOVE *vs.* THE WILLIAM FAIT COMPANY OF BALTIMORE CITY.

*Agency—Ratification of Unauthorized Contract—Measure of Damages.*

Where a sale was made by a person professing to act as defendant's agent, and the defendant, although objecting to one of the terms of sale, retained the " sold note," did not repudiate the contract, and afterwards excused his non-performance upon the ground that he had suffered losses, he cannot, in an action against him, claim that the agent did not have authority to make the sale or exceeded his authority.

In an action for the breach by the seller of a contract for the sale of merchandise, the plaintiff's measure of damages is the difference between the contract price of the goods and the market price of the same at the time and place of delivery.

Appeal from the Superior Court of Baltimore City (DEN-NIS, J.)   The plaintiff's second prayer, which was granted, was: "If the verdict be for the plaintiff, the measure of damages shall be the difference between the contract price of the goods described in the written contract, and the market price of the same goods at the time and place of delivery, on September 30th, 1897."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*Edgar Allan Poe* (with whom was *John P. Poe* on the brief), for the appellant.

*John C. Rose* and *William M. Kerr*, for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This case was tried in the Court below before the Judge-at-Large, sitting in the Superior Court of Baltimore City, without the intervention of a jury.   The verdict and judgment being against the appellant, he has accordingly appealed. The facts are, briefly, as follows: the respective parties to this cause are both dealers in the canning and sale of tomatoes.   The appellant authorized James Kean, a member of the firm of James Kean & Co., brokers in canned goods, to sell for him two thousand cases of standard three-pound tomatoes, and on the 25th of March, 1897, he did, through the instrumentality of said agent, sell said tomatoes to the appellee, at fifty-five cents per dozen or $1.10 per case, " net cash in ten days," September delivery, of the pack of 1897, with an allowance for labels of about one dollar per thousand in plain cases, and to be delivered at the appellee's wharf in the month of September, 1897.

On this state of facts it is contended, on the part of the appellant, that there is no evidence in the record legally sufficient to establish the contract sued on, which is admitted by the appellant to be the only question before the Court upon this appeal; and is substantially the language of the

appellant's third prayer, which was rejected by the Court below. The evidence in the record shows plainly the acceptance of the bought note, and the only objection made to it by the appellant were his strictures upon the terms of payment made to Mr. Kean, his broker. There never was, until after the bringing of this suit, the slightest attempt by the appellant to repudiate the contract, either with the said broker for the appellee, or directly with the appellee itself. The price of canned tomatoes advanced rapidly in the early fall of 1897. On the 3rd of September, 1897, the appellee wrote the appellant asking him to hasten the delivery of the tomatoes sold by Kean & Co. The appellant made no reply to this communication. And on October 18th, 1897, the appellee again wrote him that he had failed to fulfill his contract as stipulated, and that suit would be brought against him if he did not deliver the goods as agreed upon by him. He then called on the appellee and informed its president that he could not deliver the goods because his factory had burned down and the farmers had failed to meet their contracts with him, and that it would be useless to sue him, and no judgment could be made out of him. Kean, his broker, testified to several conversations with the appellant in which he made substantially the same statements as he had made to the appellee company. This action was then brought below, and for the first time the appellant set up the defence that he had never authorized the sale of the goods, and had never ratified Kean's action in making such sale; but the proof fails to sustain this contention. It is admitted on behalf of the respective parties to this appeal that the only question here to be considered and determined is, whether there is any evidence in the record legally sufficient to show " that the appellant ever ratified the written contract and agreed to deliver the goods therein mentioned to the appellee, net cash in ten days." It is in point of fact the sole question in the case. No exception as to the admissibility of the proof offered has been reserved, and the only contention arises on the refusal of the Court

to grant the third prayer of the appellant, which is in effect a demurrer to the evidence. The appellant's special exception to the appellee's first prayer, which was intended to raise substantially the same question which was presented by the appellant's third prayer, was overruled by the Court.

It will be appropriate here to state the views of the learned Judge who presided below and has in plain terms correctly expressed the law of the case. In passing upon the motion made by the defendant for a new trial, JUDGE DENNIS said : " When the case was first heard, I took a view (a view the correctness of which a fresh examination of the stenographer's notes of the testimony has confirmed), that the contract of sale negotiated through Captain Kean, as agent of the defendant and the plaintiff was complete. It is true that when Kean presented to the defendant the ' sold note ' the latter objected to the item of ten days of payment; but he did not repudiate the contract on that account, but took the ' sold note ' and kept it, which he certainly would not have done had he intended to repudiate the contract; in the latter event he would have refused to receive the note at all. Certainly nothing that was said or done on that occasion or afterwards ever led Kean to believe otherwise than that the transaction was completed, and he so reported to the plaintiff, to whom he gave the corresponding ' bought note.' And the defendant's subsequent conduct is wholly inconsistent with his present contention. For he not only kept the ' sold note ' but, when several months afterwards, he was called upon by the plaintiff to perform the contract, he never repudiated it then; and when shortly afterwards he was threatened with suit if he did not comply, he defended his non-compliance by stating that he had suffered losses from fire and other sources, and was not able to carry out the contract, thus recognizing in the strongest way the validity of the contract, the existence of which he now disputes."

The rule of damages properly applicable in this case will be found embodied in the appellee's second prayer, which

was granted by the Court below and is supported by *Mc-Grath* v. *Gegner*, 77 Md. 338 ; *Pinckney* v. *Dambmann Bros. & Co.*, 72 Md. 184 ; *Brown* v. *Muller*, L. R. 7 Exchequer, 318.

As to the question of ratification of the acts of the agent, it is not necessary that there should be any positive or express confirmation, and for this purpose the conduct of the principal is construed liberally in favor of the agent. *Story on Agency*, secs. 253, 255, 256, 258. MARTIN, J., delivering the opinion of the Court in the case of *Pitts* v. *Shubert*, 11 La. Ann. '286, says : " No principle is better settled than that he who is notified that a contract has been made for him, and subject to his ratification, by a person who pretended to have authority for that purpose, is presumed to ratify it, unless immediately on being informed thereof, he repudiates it." *Hatch* v. *Taylor*, 10 N. H. 538 ; *Benjamin on Sales*, sec. 882.

From a careful examination of the ruling of the Court below, we have failed to discover any error. It follows from what we have said that the judgment must be affirmed.

> *Judgment affirmed with costs to the appellee.*

(Decided March 16th, 1899).