# THE POTOMAC BOTTLING WORKS *vs.* A. H. BARBER & COMPANY.

*Depositions—Signature of Witness—General Objection to Deposition When Only Part of the Evidence is Inadmissible—Agreement Not Sufficiently Definite—Measure of Damages for Breach of Contract of Sale by Seller.*

When a commission is issed under Code, Art. 16, sec. 35, to take the testimony of non-resident witnesses on interrogatories sent with the commission, it is not necessary that each witness should sign his deposition separately. Even if the statute had required a signature it would be sufficient if the witness signed a separate certificate as to the truth of his testimony.

The fact that some of the exhibits annexed to a deposition consist of copies of letters addressed to one of the parties, who had not been notified to produce the originals, is not a ground for the exclusion of all the evidence taken under the commission. Since the particular copies objected to were not designated in the general objection to the deposition it was properly overruled.

A telegraphed to B: " Ship one hundred at once and one hundred November twenty-fifth, eggs." B replied by letter: "We are shipping the 100 today· and have entered the order for the other for the 25th. These are good eggs." *Held*, that the telegram and letter alone, and unaided by extrinsic evidence, do not constitute a definite contract, because the quantity, the quality and the price of the commodity and the time of payment are not stated, and no usage is relied on or given in evidence.

Defendant ordered from plaintiff 200 cases of eggs to be shipped at two different times for a price aggregating $1,200. One hundred cases were shipped, and because the defendant refused to pay a draft for the price —$600, plaintiff refused to ship the other 100 cases  Afterwards defendant remitted $420, and claimed that he had lost $180 on account of plaintiff's failure to deliver the second. 100 cases. In an action to recover the balance due *held*, that, even assuming that the plaintiff was liable for a breach of the contract in refusing to make the second delivery, yet a prayer is erroneous which instructs the jury that if the defendant suffered a loss equal to the plaintiff's claim by reason of plaintiff's failure to ship the second 100 cases, then the plaintiff cannot recover the unpaid balance. Such prayer fails to prescribe the standard by which the amount of the defendant's loss is to be computed.

The measure of damages for breach of a contract to deliver goods at a certain time and place is the difference between the contract price and

the market price at that time and place, and not the difference between the contract price and the price for which the buyer agreed to sell the goods to third parties.

Appeal from the Circuit Court for Allegany County (R. R. HENDERSON, J.)

The cause was argued before McSHERRY, C. J., BOYD, SCHMUCKER, and BURKE, JJ.

*J. W. S. Cochrane*, for the appellant.

*H. R. Donnelly*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

There are two bills of exception in the record now before us. One relates to the ruling of the trial Court which admitted in evidence certain testimony taken under a commission executed in Chicago; and the other concerns the action of the lower Court upon a prayer presented by the defendants. The verdict and judgment were in favor of the plaintiff and the defendants have appealed.

Suit was brought in the Circuit Court for Allegany County by A. H. Barber & Company against The Potomac Bottling Works, to recover a balance due on a sale of a quantity of eggs. All the evidence adduced by the plaintiff was taken under the commission above alluded to, and as the right of the plaintiff to recover depends entirely on that evidence its admissibility will be considered at once. The two objections to this evidence relied on in the argument are founded on a supposed irregularity in the method of signing the depositions; and upon the fact that *copies* of certain letters are annexed to the depositions though no notice had been given to the defendants to produce the originals. It appears by the docket entries and the return of the commissioner that by leave of the Court a formal commission was issued to Charles S. Schoenmann, of Chicago, who, in execution of the commission duly swore and examined the witnesses produced before him on the interrogatories sent with the commission. Instead of

each witness signing the deposition made by him, there is at the close of all the depositions and immediately preceding the return of the commissioner a sheet of paper containing separate certificates signed by each witness certifying that he has "read the within testimony and the same is true as to his testimony herein given." Each witness examined, signed such a certificate, and the commissioner wrote beneath each signature the words, "Subscribed and sworn to before me this 4th day of October, 1905, C. S. Schoenmann, Notary Public." This was a sufficient signing by the witnesses, even if the statute under which the commission was issued had required in express terms that the witnesses should sign the depositions. There is, however, no such express provisions. The commission was issued under *sec. 16, Art. 35*, Code of 1904, being *sec. 15, Art. 35*, Code of 1888; and whilst depositions taken under *sec. 17 of Art. 35*, Code of 1904, or *sec. 16 of Art. 35*, Code of 1888, are distinctly required to be signed when no commission has been issued, *no* such requirement is found in direct terms in the section under which the commission in this case was issued. Even if the copies of letters written by the plaintiff to the defendants should not have been appended to the depositions unless the defendants had been given previously, due notice to produce the originals, that fact was no cause to warrant the exclusion of *all* the evidence taken under the commission. The particular copies objected to should have been designated, and if the objection had been well taken as to them they would have been excluded. That was not done, and the Court was clearly right in overruling both of the objections which were made; and there was no error committed in permitting the depositions to be read in evidence.

Secondly. At the close of the case the defendants offered the following prayer which the Court rejected: "That the 'wire' of the defendants and the letter of the plaintiff referring to same of November 20th, 1903, offered in evidence constitutes one indivisible contract, and if it be found from the evidence that defendants suffered the loss equal to the plain-

tiff's claim by reason of the failure of the plaintiff to ship the second installment of eggs on November 25th as plaintiff had agreed to do, then the plaintiff cannot recover in this case." A brief reference to the facts now becomes necessary in order that it may be seen whether the ruling on the prayer was right. Obviously the first inquiry which the prayer as framed presents is this:  Do the telegram and letter therein referred to evidence of themselves and without more, the contract between the parties ?   The telegram is as follows:  "Ship hunhred at once and hundred Nov. twenty-fifth, eggs.    Potomac Bottling Company."   The letter in reply thereto is in these words: "We received your wire of yesterday this morning as follows: 'Ship hundred at once and hundred Nov. 25th, eggs.' We are shipping the hundred today and have entered the order for the other for the 25th, these are good eggs with the exception of the loss that we have written you about.   It looks very much like eggs were going still higher and no doubt about the time you have received these eggs they will prove to be a good thing for you, A. H. Barber & Co."   It is clear that these two papers standing alone and unaided by any extraneous circumstances evidence no definite express contract at all, because the *quantity*, *quality* and the *price* of the commodity and the *time of payment* are entirely omitted from them—no usage or custom was relied on or alluded to or given in evidence.   The *things* bought were eggs.   "Ship hundred at once."   Hundred, what?   Eggs, crates, cases or dozens of eggs?  Neither the telegram nor the letter indicates. Some definite quantity was intended by both parties, but the two papers failed to designate what that quantity was to be. Were the eggs to be fresh eggs or cold-storage eggs?  Were they candled or to be recandled?  The alleged contract is silent on the subject of *quality*.   No *price* is set forth in the two papers referred to in the prayer, and though generally cash is implied in the absence of different terms, even cash may be waived by an unconditional delivery without a concurrent demand of the money.   *Powell et al.* v. *Bradlee & Co.*, 9 G. & J. 220.   The prayer was erroneous in announcing as a legal

proposition that the two papers alluded to constituted one indivisible contract, because the two papers lacked, in the particulars indicated some essential elements of a valid contract. This furnished an adequate reason for rejecting the prayer. But there were other reasons. From various telegrams and letters found in the record it appears that the Bottling Company bought from Barber and Company two hundred cases of eggs at a price which aggregated twelve hundred dollars. One hundred cases costing six hundred dollars were shipped. A draft for the price was drawn on the purchasers but was not paid. Barber and Company then refused to deliver the second one hundred cases. Later on the vendees remitted four hundred and twenty dollars to the vendors and claimed. that they had lost one hundred and eighty dollars by reason of the failure of the vendor to deliver the second one hundred cases. This suit was then brought to recover that one hundred and eighty dollars from the Bottling Company. If it be conceded that the vendor broke the contract of sale and thereby became liable to the vendees in damages for that breach,. the prayer is wrong in defining the measure of such damages. The doctrine of recoupment is relied on in the prayer. Now what are the damages which the defendants are entitled to set off against the plaintiff's claim for the unpaid balance of the contract price? In such cases as this the measure of damages is ordinarily the difference between the *contract* price of the articles sold and the *market* price at the time when and the place where they should have been delivered. *Pinckney* v. *Dambmann Bros. & Co.*, 72 Md. 184, and cases there cited; *Hartlove* v. *Fait Co.*, 89 Md. 254. Instead of permitting the jury to find what that difference was, or whether there was any difference at all, the prayer, had it been granted, would have instructed the jury, that if, the defendants suffered a loss equal to the plaintiff's claim by reason of the failure of the plaintiff to ship the second one hundred cases, then the plaintiff could not recover the unpaid balance; but it wholly failed to prescribe or fix any standard by which the amount of that loss was to be ascertained or computed. It is true one of the de

fendants testified that he had sold all of the eggs which had been ordered but which had not been delivered and that the difference in price between what he had purchased them for and the price at which he had sold them to his customers was one hundred and eighty dollars, but no evidence was adduced tending to show what the market price of such eggs was at the time when and in the place where they should have been delivered.   It is the difference between the *contract* price and the *market* price at the time and place indicated which furnishes the measure of damages for a breach and not the difference between the contract price and the price for which the vendee agreed to sell the article, to some one else.   At all events the prayer should have been framed in accordance with the established rule regulating the *quantum* of damages in such cases; and it would have been error had the Court granted it in the misleading form in which it was drawn.

As we find no error in either of the rulings excepted to the judgment will be affirmed, and it is so ordered.

*Judgment affirmed with costs above and below.*

(Decided June 14th, 1906.)