RICKS
v.
YATES.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*C. Dewey* and *G. V. Howk*, for the appellant.

*R. Crawford*, for the appellees.

---

RICKS *v.* YATES, Administrator.

A person who, having been employed to labor for a particular term, abandons the service before the term has expired, may, after its expiration, recover from his employer, upon the common count for work and labor, a sum equal to the benefit of his service over the damage occasioned by his quitting it.

Where the employer, without sufficient cause, has dismissed the servant before the end of his term, the latter can only recover the value of his services to the time he was dismissed, and the damages which he has sustained by the dismissal.

ERROR to the *Perry* Circuit Court.

Friday, May 26..

PERKINS, J.—*Hiram Philips*, whose administrator continues the suit, commenced an action against *Caspar Ricks*, before a justice of the peace, upon a cause of action as follows:

The plaintiff claims of defendant "50 dollars, for service rendered him in the fall of the year 1847, in steering and piloting a flat-boat load of lumber from or near the mouth of *Oil-Creek, Perry* county, *Indiana*, thence down the *Ohio* into the *Mississippi* river, and down said river, with intent to take her to *New-Orleans*, as per contract; which said boat the plaintiff was steering and piloting according to contract, until he was abruptly, insolently, and without cause, ordered off of said boat, when he, the plain-

tiff, was diligently discharging the duties incumbent upon him as pilot and steersman."

The cause went by appeal to the Circuit Court, where there was a judgment for the plaintiff for 50 dollars.

By a bill of exceptions it appears, that *Ricks*, being the owner of two flat-boats, hired *Philips* to pilot one of them from *Oil-Creek* to *New-Orleans*, for 50 dollars, said *Ricks* piloting the other, and the two making the trip in company; that above *Vicksburg*, *Ricks* discharged one of the hands on the boat with *Philips*; that the latter considered this act as an improper interference with his crew, and for this cause abandoned the boat also with the discharged hand; and he now sues to recover the agreed price for the entire trip to *New-Orleans*, viz., 50 dollars.

The Court instructed the jury to whom the cause was referred, as follows:

" The owner of a boat and cargo bound from the mouth of *Oil-Creek*, in *Perry* county, to *New-Orleans*, with a pilot and crew engaged for the trip, has a right to have his boat landed at an intermediate point, and such landing, without any unreasonable delay, does not discharge the pilot and crew from their contract for the trip, and give them a right to sue for the trip or any part thereof.

" If *Philips* was discharged without good cause by *Ricks*, he can recover in this action.

" If *Philips* went away from the boat and left *Ricks's* employ without just cause, he can not recover a copper.

" If the jury believe from the evidence that *Ricks* discharged *Philips* from his boat without just cause, the contract to pilot said boat to *New-Orleans* was at an end, and *Philips* could then have maintained an action for his wages; and a request by said *Ricks* next morning to return to his service was not binding on said *Philips*."

The Court refused to give the following instructions:

" If *Philips* left defendant's boat before the voyage was finished for which he engaged, because the defendant, the owner, discharged a hand against the will of the plaintiff, he can not recover in this case.

" The owner of the boat and cargo has the right to dis-

charge a hand and boatman employed as part of the crew, without the consent of the captain or pilot."

We shall not go into an examination separately of these several instructions, as we can more briefly state the law of the case, so far as questions of law properly arise in it, without doing so.

Considerable uncertainty has prevailed, and still prevails, in reference to the remedy or remedies upon the breach of a simple contract for labor for a specified time, or in a specified undertaking. It was once regarded to be law that if a person employed for a term by another, voluntarily, or by the act of God, left his service before the expiration of the period contracted for, he could recover nothing, in any form of action, for the service he might have rendered under the contract; and so is the decision still in many Courts. But, in this Court, all the late decisions on the point (and they are numerous) hold that in such case, the person so leaving the service of another (or his representative, if he be dead) may recover, upon the common count for work and labor, after the period for which he was to labor has elapsed, to the extent of the benefit his service actually rendered was to his employer, over and above the damage his leaving occasioned; the Court treating the contract in such case, at that time, as rescinded. *Coe* v. *Smith*, 4 Ind. R. 79, and cases cited.

So, on the other hand, it was once held to be law, that if an employer discharged, without sufficient cause, a person hired for a certain period, or for a specified undertaking, the person so discharged might wait till the period or time for the undertaking had elapsed, and then sue for the contract price for the entire time or undertaking. We do not say that this doctrine has ever been asserted from this bench, though it may have been, as it is found in the old *English* and in some *American* authorities.

But such a doctrine will not harmonize with the decisions that have been here made as to the right of the person employed to sue, on leaving his employer, after the time named in the contract has elapsed, for the beneficial service he may have rendered; for if he can sue for benefit

May Term,
1854.

RICKS
v.
YATES.

rendered, over and above damage occasioned by leaving, then the employer, on discharging the employed, should only be liable to pay for the service rendered up to the time of the discharge, with the damage occasioned by the discharge. Such must be the decision—indeed such has already been the decision of this Court. *Jones* v. *Van Patten*, 3 Ind. R. 107. And such, we find, is now beginning to be the rule of decision in *England.* In a late case, *Goodman* v. *Pocock*, decided in *June*, 1850, in the Q. B., and reported in the 69th vol. of Eng. Com. Law. Rep. 574, in which a clerk, employed for a specified time, had been discharged before the expiration of said time without cause, *Patteson*, J. said:

" Mr. *Smith*, in the note, already cited, to *Cutter* v. *Powell*, 2 Smith's Lead. Cas., p. 20, says, 'perhaps the result of the authorities on this subject may be, that a clerk, servant, or agent, wrongfully dismissed, has his election of three remedies, viz., that, 1. He may bring a special action for his master's breach of contract in dismissing him, and this remedy he may pursue immediately. 2. He may wait till the termination of the period for which he was hired, and may then, *perhaps*, sue for his whole wages in *indebitatus assumpsit*, relying on the doctrine of constructive service. *Gandell* v. *Pontigny*, 4 Campbell 375. 3. He may treat the contract as rescinded, and may *immediately sue*, on a *quantum meruit*, for the work actually performed. *Planche* v. *Colburn*, 8 Bing. 14, (Eng. Com. L. Rep. vol. 21.)'

" I think Mr. *Smith* has very properly expressed himself with hesitation as to the second of the above propositions; it seems to me a doubtful point."

*Coleridge*, J. " In a case like this, the servant may either treat the contract as rescinded, and bring *indebitatus assumpsit*, or he may sue on the contract [for damages for the breach], but he can not do both; and if he has two counts [one in *indebitatus assumpsit* for the value of the service rendered, and one on the contract for the breach] he must take the verdict on one only." And in an action on the contract for the breach, the unpaid wages for the

part of the service rendered are included as a part of the
damages.

*Earle*, J.  "I am of the same opinion.  The plaintiff had the option either to treat the contract as rescinded, and to sue for his actual service, or to sue on the contract for the wrongful dismissal."  "As to the other option referred to by Mr. *Smith*, I think that the servant can not wait till the expiration of the period for which he was hired, and then sue for his whole wages, on the ground of constructive service after dismissal.  I think the true measure of damages is the loss sustained at the time of the dismissal.  The servant, after dismissal, may and ought to make the best of his time; and he may have an opportunity of turning it to advantage.  I should not say anything that might seem to be a doubt of Mr. *Smith's* very learned note, if my opinion on this point were not fortified by the authority of the Court of Exchequer Chamber in *Elderton* v. *Emmons*, 6 Com. B. 160, (E. C. L. R. vol. 60.)"

By comparing the instructions and the judgment below with what we have already said, as declaratory of the law of the case, it will at once appear that both are erroneous; and, as a consequence, that the judgment must be reversed.

The question has been argued whether *Philips* had just cause for leaving the service of *Ricks*.  An attempt was made on the trial to prove that by the custom of the river, the owner of a flat-boat could not discharge a hand on it without the consent of the pilot, but the attempt failed, and the evidence does not sufficiently present the facts to enable us to decide upon the correctness of the act of the owner in discharging the hand.  It does not appear whether there was a necessity for the continuance of the dismissed hand, nor whether the crew was sufficient without him, nor whether another hand was offered to supply his place; nor, indeed, what became of the boat after *Philips* left it.  The evidence, on another trial, may make the question plain.

*J. Coburn*, for the plaintiff.

*J. Morrison* and *S. Major*, for the defendant.

