# CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY ET AL. v. SCOTT ET AL.

[No. 5,782. Filed November 20, 1906. Rehearing denied January 30, 1907.]

1. CONTRACTS.—Entire.—Part Performance.—Recovery for.—If the part performance of an entire contract is beneficial to defendant, recovery may be had, though no excuse be shown for failure to complete such contract. p. 428.

2. SAME.—Forfeiture.—Conditions Precedent.—Wages.—Wages, for a stipulated service, cannot be forfeited because of failure to complete the service, unless the entire performance was made a condition precedent to any recovery. p. 429.

3. SAME.—Essence of.—Intention.—Equity. — Relief. — Where time is expressly or by plain inference made of the essence of a contract, equity will not relieve the defaulting party. p. 429.

4. SAME.—Essence of.—Time.—Railroads.—Where a general contractor agreed to have a certain section of railroad completed by August 1, 1904, and such contractor sublet to plaintiffs a portion thereof on October 10, 1903, plaintiffs proposing that such work was "to be continuous and completed at once," and the contractor accepting such proposal

"with the understanding that sufficient force is to be put on to complete by February 1, 1904," time of completion is not of the essence of plaintiffs' contract, where both parties considered it an excavator job, which could only be performed in the absence of freezing weather.   p. 429.

5.  CONTRACTS.—*Construction.—Acts of Parties.*—The construction placed upon a contract by the parties thereto, if not inconsistent with its terms, will be adopted by the courts.   p. 431.

6.  SAME.—*Payment.—Failure.—Default.*—Where plaintiffs contracted with defendant company to construct a certain section of railroad bed, ninety per cent of the price to be paid monthly as the work progressed, and such company failed to pay such amounts at the times specified, it was in default.   p. 431.

7.  SAME.—*Quantum Meruit.—Recovery on.*—Where plaintiffs contracted to do a certain job of work, and the defendant company defaulted in the conditions to be performed by it, plaintiff may recover on the *quantum meruit.*   p. 431

8.  APPEAL.—*Trial.—Special Findings.—Evidence.*—Where there is some evidence in support of the special findings, they will not be disturbed.   p. 432.

From Dearborn Circuit Court; *George E. Downey,* Judge.

Suit by John W. Scott and another against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and another.   From a decree for plaintiffs, defendants appeal. *Affirmed.*

*James W. Noel* and *George M. Roberts,* for appellants. *McMullen & McMullens,* for appellees.

COMSTOCK, P. J.—Appellees, subcontractors, filed their complaint in three paragraphs against appellants, the Shutt Improvement Company, railway contractors, and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and sought a judgment against the appellant Shutt Improvement Company for work and labor performed under a certain contract with appellees, and sought to enforce a mechanic's lien, for the value of said work and labor, against the railroad company.

The complaint was first filed in one paragraph, to which the appellants filed their separate demurrers, which were overruled by the court. Afterwards, the appellees filed their second and third paragraphs of complaint, in which they set out a contract between themselves and the Shutt Improvement Company, alleging a failure on the part of the Shutt Improvement Company to make payment, as provided in said contract, and asking judgment against said Shutt Improvement Company for the value of the work and labor up to the time of the alleged default, and praying for the enforcement of a mechanic's lien against the appellant railroad company for the value of said work and labor. The second and third paragraphs of complaint are practically of the same tenor. The complaint avers that, while there was a contract between appellees and appellant Shutt Improvement Company, yet, appellant improvement company violated the contract by failure to pay as provided, after appellees had done the less remunerative work, and they sought to recover the value of their work without regard to the contract price. The court sustained the demurrer of the railroad company to the first paragraph of the original complaint, overruled the demurrer of the Shutt Improvement Company to said paragraph, and overruled the demurrers of both appellants to the second and third paragraphs. The appellants thereupon filed their separate and several answers in three paragraphs, the first being a general denial, the second a plea of payment, and the third alleging that the appellees abandoned the contract, set out as an exhibit to their complaint, left a large portion of the work thereunder undone, and that, by reason thereof, the appellant Shutt Improvement Company was entitled to damages amounting to more than any unpaid sum due the appellees, and praying for a set-off, and that said improvement company have judgment over for damages. At the time of filing the answers, appellant improvement company filed its cross-complaint, in which it set out the contract

between itself and said railroad company, and averred that said improvement company was thereby compelled to complete the same; that appellees have been overpaid for the amount actually done by them, and praying for damages in the sum of $3,000 on account of the abandonment of the contract by appellees.

The court made a special finding of facts, which may be summarized as follows: Prior to October 10, 1903, said defendant railway company began the work of relocating its track in Dearborn county, Indiana. The defendant Shutt Improvement Company, a corporation engaged in the business of railroad construction, from October 1, 1903, to October 1, 1904, was engaged as general contractor, under a written contract with the defendant railway company, in the construction of a new roadbed upon the right of way of the defendant railway company, in Dearborn county, Indiana, and said contract included the excavation of a great number of yards of earth and the making of fills therewith, and included all excavations and fills hereinafter mentioned as contracted to be done by the plaintiffs herein between bridges No. 147 and No. 163. The plaintiffs, Scott and Walker, partners doing business under the firm name and style of Scott & Walker, were engaged in the contracting business, and on October 10, 1903, they entered into a contract with the defendant Shutt Improvement Company to do the excavating that then remained undone between bridges No. 147 and No. 163. Said contract, which was in writing, was as follows:

"Cincinnati, Ohio, October 10, 1903.
Shutt Improvement Company,
    Cincinnati, Ohio.
Gentlemen:
    We propose to do the excavation for you on the work Bird is now on for twenty cents per cubic yard and one cent per cubic yard per each 100 feet from east side of creek, extra for all work that goes over Tanner's

creek, you to finish and build the bridge over Tanner's creek.

Any portion of the work which we are unable to complete by reason of uncompleted bridge piers, or present railroad tracks, or for any other cause over which we have no control, is to be omitted. In other words, our work is to be continuous and completed at once. Payment of ninety per cent to be made monthly, and balance on completion of contract.

Yours very truly,

Scott & Walker.

Accepted with the understanding that sufficient force is to be put on to complete by February 1, 1904.

Shutt Improvement Company,

by E. W. Shutt."

Scott & Walker began work under said contract on October 15, 1903, and there was then to be executed upon that part of the right of way covered by their contract an estimated yardage of 41,329. Bird, as subcontractor, had theretofore been engaged on the same work covered by the contract of the plaintiffs, working under a contract with the defendant Shutt Improvement Company. The estimated amount of excavation in the work originally was 53,681 cubic yards, and the estimated amount of yardage taken out by Bird was 12,352. The plaintiffs continued to work on said contract until November 26, 1903, when they ceased work thereon, and after April 1, 1904, the work was completed by the defendant Shutt Improvement Company. The plaintiffs did preparatory work on said contract by clearing, grubbing, digging out stumps, etc., by filling up gullies so that an excavating machine might pass over, and did work in sloping banks left unfinished by subcontractor Bird. Plaintiffs' predecessor, Bird, the plaintiffs, and defendant Shutt Improvement Company used an excavator in said work and neither one of them at any time used a steam shovel. Plaintiffs temporarily ceased work under said contract on November 26, 1903, because the ground was so frozen that repeated efforts to work the excavator resulted

in repeated breaking thereof, and it became impracticable to attempt, and practically impossible to do, further work under then existing conditions of the ground, and said conditions continued until long after December 20, 1903. The parties thereto construed said contract between the plaintiffs and the defendant construction company to mean that payment for ninety per cent of the estimated amount of work done in any one month should be due on the 20th day of the next succeeding month. The amount of excavation done by the plaintiffs during the month of October, 1903, was by the engineers of the defendant railway company estimated at 3,500 yards, and on November 27, 1903, the defendant construction company paid the plaintiffs $630 on account thereof. Soon after December 1, 1903, the defendant railway company's engineers furnished to plaintiffs an estimate of all work done up to December 1, which estimate was 11,240 cubic yards of excavating and two acres of clearing, and on December 14, after said estimate was furnished, the plaintiffs sent to the defendant construction company a bill for 11,240 yards of excavating at twenty cents per yard, with ten per cent deducted, and with credit thereon for $630 theretofore paid, and, in a letter accompanying said bill, requested payment thereof when due. On December 15, 1903, the defendant construction company, by letter to plaintiffs, acknowledged the receipt of said bill and promised payment when due, and, by the construction placed on said contract by said parties, the time when said bill became due was December 20, 1903. The defendant construction company did not, on or before said day, pay the plaintiffs any sum whatever as the amount then due them, nor did said company, on or before said day, tender to plaintiffs any amount of money in payment of the amount then due them under said contract. Thereafter, on December 28, 1903, January 4, 1904, and January 9, 1904, the plaintiffs requested payment of the amount due, according to said estimate, and at no time, in reply to said request, did

the defendant construction company make any claim that said amount, for which the bill had theretofore been rendered as stated, was not the correct amount due the plaintiffs under said contract on December 20, 1903, as a monthly payment upon estimate for the amount of work during the preceding month. On January 25, 1904, the defendant improvement company paid to the plaintiffs the sum of $634.52, and claimed credit for $202.48, which is found to be the amount due the defendant construction company from the plaintiffs for coal, repairs, and supplies furnished to plaintiffs by said defendant company. The Shutt Improvement Company was in default under said contract after December 20, 1903, in that it failed on or before that day to pay to the plaintiffs ninety per cent of the contract price for the work done by them during the month of November preceding. The plaintiffs, but for the frozen condition of the ground, as hereinbefore found, could, with the force and equipment on said work, immediately preceding November 26, 1903, have completed said work by February 1, 1904; and, but for the condition above named, it was possible for plaintiffs to have completed said work between December 20, 1903, and February 1, 1904. Plaintiffs, after November 26, 1903, brought teams and equipment to the work and were ready and willing to resume work at any time that the condition of the ground would permit, up to the time of the default of the defendant construction company hereinbefore found, and the plaintiffs were not theretofore in default. The contract between the plaintiffs and the defendant construction company did not specify the amount of work to be done as indicated by the character of machinery to be used in the doing, but plaintiffs' predecessor, Bird, and plaintiffs treated it as an excavator job, with knowledge on the part of the defendant construction company, before they began said work, that they would so treat it. It was not a job that could have been worked advantageously or econom-

ically as a steam-shovel job, and was not, at that time, a job which a competent contractor would regard as a practical steam-shovel job, but was, in fact, on November 26, an excavator job. The equipment used on said work by the plaintiffs was in all respects fit and proper. The excavator was a good and serviceable machine. It had been doubly strengthened in some of its parts for this particular work and it would do the work under any conditions under which any other excavating machine would do it. Upon said work plaintiffs did grubbing and clearing to the amount of two acres and excavated and removed 11,640 cubic yards of earth, 200 yards of which were from slopes in Bird Cut, 400 yards were not included in estimate furnished by defendant railroad company's engineers, 300 yards were placed in gullies above grade, to permit the excavator to pass over, and 400 yards were necessarily rehandled with scrapers and shovels in placing it next to the east abutment of bridge No. 163 ; and said work, including grubbing, clearing, sloping, and rehandling, and necessary subsequent rehandling of earth placed in gullies above grade, so done by plaintiffs, was reasonably worth to the defendants and to each of them the sum of twenty cents per cubic yard on said total yardage of 11,640, a total sum of $3,275.60. After April 1, 1904, by reason of the refusal of plaintiffs to complete said work, the defendant construction company made efforts to re-let the contract and procure the completion of the work by contract, and, being unable so to do, said company was compelled to and did complete said work, at a cost, to itself, of $8,799.73 ; and the cost of the completion of said work by the plaintiffs, under the terms of their contract, would have been $6,017.80. Plaintiffs gave proper and timely notice of their intention to hold a lien on the right of way, franchise and property of defendant railroad company in the sum of $4,092.55, and served notice upon the defendant railway company that they had rendered were now rendering

and would render service in the way of grading, building embankments, etc., to and under a contract with the Shutt Improvement Company, and that the labor and service would be reasonably worth the sum of $9,000. Upon the facts found the court stated conclusions of law and thereafter overruled appellants' separate motions for a new trial, and upon the finding of facts and conclusions of law rendered judgment for $2,203.05 and the costs of the suit, and decreed that appellees have a valid lien against the property of the appellant railroad company.

Appellants rely particularly upon the tenth and eleventh assignments of error, namely, that the court erred in overruling the separate motions of appellants for a new trial. Appellants especially contend that, from the evidence, the finding and ultimate facts contained in findings seventeen and nineteen are contrary to law, and are not supported by any evidence, and are contrary to all the evidence produced at the trial. Said findings are as follows: "17. The defendant Shutt Improvement Company was in default, under said contract, after December 20, 1903, in that it failed, on or before that day, to pay to the plaintiffs ninety per cent of the contract price for the work done by them during the month of November, preceding." "19. The plaintiffs, after November 26, 1903, kept teams and equipment on the work, and were ready and willing to resume work at any time that the condition of the ground would permit, up to the time of the default of the defendant construction company hereinbefore found, and the plaintiffs were not theretofore in default."

It is the law in this and several other states that recovery may be had for part performance of the entire contract, though there be no cause or excuse for its abandon-

1.  ment, if the part performed is beneficial. 3 Sutherland, Damages (3d ed.), [466], §690; *Coe* v. *Smith* (1853), 4 Ind. 79, 82, 58 Am. Dec. 618; *Ricks* v.

*Yates* (1854), 5 Ind. 115; *Wolcott v. Yeager* (1858), 11 Ind. 84, and cases cited.

Under this rule, there can be no forfeiture of wages, unless there is a failure to perform some stipu-
2. lated service, which as a whole is a condition precedent. 3 Sutherland, Damages (3d ed.), [468], §691.

Where the parties have so stipulated as to make time the essence of a contract, courts of equity will not relieve the defaulting party. The difficulty in any case is
3. in determining when time has been made essential. The intention of the parties must determine and such intention should clearly appear before its inference. *Cartmel v. Newton* (1881), 79 Ind. 1.

Whether the defendant Shutt Improvement Company was in default after December 20, 1903, as found in said seventeenth finding, depends upon the question
4. whether time was of the essence of the contract with appellees. As hereinbefore shown, the proposition was made in writing by appellees to the Shutt Improvement Company for certain work. In this proposition occur these words:

"In other words, our work is to be continuous and completed at once."

This proposition was accepted by the following writing, signed by appellant improvement company:

"Accepted with the understanding that sufficient force is to be put on to complete by February 1, 1904."

It is in evidence, also without dispute, that the general contract for the reconstruction of nineteen miles of the roadbed of what is known as the •Big Four railroad provided that the contractor was limited in time for the performance of the entire contract and was liable to a payment of $500 liquidated damages for failure to complete the contract on time. The general contract provided that the railroad company should have the right to take over completed

sections and run its trains over said sections, and that the railroad company was, while appellees were engaged upon the contract, requiring of the general contractor and of the subcontractor that appellees' part or section should be completed so that the railroad company could complete and use a portion of its new roadbed.   The contract between appellees and appellant improvement company does not, in terms, require the work to be completed by February 1, 1904.   It fixes no penalty for a failure to complete the work nor does it reserve to appellants the right to put on a sufficient force to complete the work within the time.   The absence of these provisions might of themselves throw doubt upon appellants' claim.   The fact that the Shutt Improvement Company was limited in time, under penalty, to finish the nineteen miles of reconstruction by August 1, 1904, six months after February 1, 1904, might reasonably have been interpreted by the trial court as tending to show that the time, February 1, was not regarded as of importance.

It does not clearly appear from the contract or contracts that the parties intended to make time essential, but intention may be inferred from the acts of the parties.   The evidence shows that after appellees had ceased work because of the frozen ground, appellant improvement company, with knowledge of the fact, promised to pay appellees what was due them, and afterwards it paid them a part thereof and talked about appellees' taking another job of work from appellant improvement company, and, on February 29, appellant improvement company, by letter, informed appellees that frost was out of the ground and that work could be completed.   Appellees frequently looked at and had the ground tested, and kept their equipments on the ground until about April 1, 1904.   It does not appear that before the trial of the cause there was anything in the conduct of either of the parties to indicate that they considered time as of the essence of the contract.   Was the Shutt Improvement Company in default in failing to pay ninety per cent

of the contract price for the work done during the month of November, preceding?

The work was begun under the contract on either October 15, or 17, 1903, and continued until November 26, 1903, when work ceased. Between the dates named, appellees excavated 11,640 cubic yards of earth. The contract was indefinite as to time and as to what said appellant should pay to the subcontractor, but the parties construed the contract to mean that ninety per cent of the estimate for each month was to be paid on the 20th of the succeeding month. This the parties were competent to do, as the construction given was not inconsistent with the contract itself.

Special finding twenty says that the contract did not specify the character of the work, but indicated it by the character of the machinery to be used in the doing, and finds, in substance, that the job was treated as an excavator job by the predecessor of appellees, and also by the appellees, with the knowledge of the improvement company, before they began work, and without protest or suggestion, and that the construction company completed it as an excavator job, and that appellees were prevented from completing the work by November 1, 1904, only by the frozen condition of the ground. We conclude that there was abundant evidence to warrant the court in holding that time was not of the essence of the contract; that, therefore, appellees did not forfeit their right to compensation for the work done, and that appellant improvement company was in default on December 20, 1903.

There is some evidence tending to support the nineteenth finding, but in the view we take of the matter appellees were entitled to recover on the *quantum meruit* without reference to that finding.

We have considered findings seventeen and nineteen, of which appellants complain most. There is some evidence

tending to support the others to which they except, and, under the well-recognized rule that only evidence tending to sustain the special finding will be considered, we must hold that the position of appellants is not well taken. We can find no error.

Judgment affirmed.