## CULLEN-FRIESTEDT COMPANY *v.* TURLEY.

[No. 7,441. Filed March 12, 1912. Rehearing denied May 17, 1912.]

1. CONTRACTS.—*Contract for Materials.—Part Performance.—Recovery.*—Where one enters into a special contract to furnish materials to another, and furnishes the same, though not in the time or manner stipulated in the contract, and the other party accepts and uses the same the party furnishing such material may recover the value thereof less the damages occasioned by his failure to comply with his contract. p. 472.

2. CONTRACTS.—*Contracts for Materials.—Part Performance.—Recovery on Quantum Meruit.*—Where one, having a special contract to furnish materials, is prevented from completing the contract by the other party, he may recover for the materials furnished on the *quantum meruit*, not to exceed the contract price. p. 472.

3. CONTRACTS. — *Action. — Counterclaim. — Damages. — Proof of Breach.*—In an action to recover for stone furnished defendant, though not furnished at the time and in the manner stipulated in the contract, defendant was required to show that there had been no breach of the contract on its part, in order to recover on a counterclaim for damages, for breach thereof by plaintiff. p. 473.

4. CONTRACTS.—*Contract for Materials.—Performance.—Breach.*—Where plaintiff's inability to comply with his contract to furnish stone to defendant in quantities up to 150 cubic yards per day was condoned by an arrangement whereby defendant was to bear

with plaintiff, and purchase stone needed in the open market, and when a time should come that defendant could not use as much stone as plaintiff could furnish, plaintiff was to bear with defendant, plaintiff, on thereafter being directed by defendant to ship no more stone until further orders, could not rely on such direction as constituting a breach of the contract, unless defendant failed for an unreasonable time to give such further orders. p. 473.

5. CONTRACTS.—*Contract for Materials.—Time of Payment.— Breach.—Recovery.*—Where, under a contract to furnish stone, timely payment of the amount due for monthly shipments was of the essence of the contract, defendant's failure to make such payments was a breach which absolved plaintiff from further performance on his part, and he was entitled to recover for the reasonable value of the stone furnished, less the damages suffered by defendant on account of his failure to furnish the full amount needed before the breach of the contract by defendant. p. 474.

6. CONTRACTS.—*Demand for Performance After Breach.*—Where the time of payment is of the essence of a contract, a party thereto while in arrears has no right to demand a performance by the other party.  p. 474.

7. CONTRACTS.—*Contract for Materials.—Action for Reasonable Value.—Evidence.*—In an action for the reasonable value of stone sold pursuant to a contract, the contract price is in itself *prima facie* evidence of the value.  p. 475.

From Washington Circuit Court; *Thomas B. Buskirk,* Judge.

Action by Oliver P. Turley against the Cullen-Friestedt Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Perry McCart, Elmer H. Adams, Dwight S. Bobb* and *Asa G. Adams,* for appellant.

*Will H. Talbott, M. B. Hottell, Shirts & Fertig,* for appellee.

IBACH, P. J.—Appellee brought this action against appellant on a complaint in two paragraphs, the first on a written contract for the sale and delivery of certain stone, the second on a common count for stone delivered to and accepted by appellant, a bill of particulars of which was

filed with the complaint. Appellant filed a set-off, claiming damages amounting to $11,857.68 for appellee's failure to perform the contract for the sale of stone.

The principal and controlling question is whether the evidence is sufficient to support the conclusion of law that appellee was entitled to recover the amount stated in a special finding of facts by the court.

The finding of facts shows that the parties entered into a written contract in the following words:

> "I agree to furnish Cullen-Friestedt Company all the crushed stone necessary for the work of concreting the tunnel located between stations 1,028 and 1,051, and known as the Burton tunnel, on the Southern Railway Company's line between French Lick and Jasper, Indiana, said crushed stone to be to the satisfaction and acceptance of the engineers of said Southern Railway Company, and to be furnished in quantities as required by Cullen-Friestedt Company up to one hundred fifty cubic yards per day, at the following prices: Eighty-five cents per cubic yard of crushed stone, measured f. o. b. cars at quarry located east of Glass Rock, Indiana.
>
> Payments to be made monthly by the Cullen-Friestedt Company, on the 20th of each month, for the stone furnished and accepted by the Southern Railway Company and used during the preceding month.
>
> Oliver P. Turley,<br>Accepted Cullen-Friestedt Co.,<br>By F. J. Cullen.
>
> Dated at French Lick, Indiana, this 27th day of May, 1907."

The following facts are also found by the court: At the time the written contract was executed, plaintiff was the owner of an option for the purchase of a stone-quarry, not yet opened up, in which machinery for crushing had not been installed, nor a switch laid leading to a line of railway, which the defendant knew. The contract was made by the parties with these facts in view, defendant knowing that plaintiff intended to equip the quarry for the express purpose of carrying out the above contract. Plaintiff fitted up

his quarry, and on June 11, 1907, began shipping stone to defendant under said contract, and continued to ship stone to the amount of about sixty cubic yards a day until August 17, 1907, and on August 18, 1907, defendant ordered plaintiff, by telegram, not to ship any more stone until further orders. No further orders were given, and thereafter plaintiff shipped no more stone to defendant. He shipped between June 11 and August 18 in all 3,443.83 cubic yards to de. endant, all of which was received and accepted by defendant under said contract, and was used by defendant in constructing the tunnel. The contract price for such stone was $2,927.86, and such was its value. Soon after plaintiff began shipping stone, it became apparent to the parties that he would not be able to ship the stone as fast as defendant demanded, since proximity to the railroad track caused difficulty in working the quarry, and the parties agreed that plaintiff should do the best he could, and defendant might, in the meantime, go into the open market and purchase other stone until the situation of the quarry was such that plaintiff could meet defendant's requirements. Between the date of the first shipment and the sending of the telegram on August 18, defendant bought in the open market stone for which it paid in excess of the contract price $541.68. At the time the telegram was sent, to ship no more stone until further orders, defendant had its bins at the tunnel full of crushed stone, and had eighteen carloads on its side-track, which plaintiff had shipped and defendant had received, and plaintiff was then furnishing and was able to furnish 150 yards per day. On June 25, 1907, plaintiff rendered defendant an itemized statement for stone shipped under said contract to date, and defendant paid this bill on August 2, 1907, as corrected for a slight mistake in amount, without making any claim against plaintiff for breach of contract. On July 25, 1907, plaintiff rendered an itemized statement of stone shipped from June 25, and on August 26 a statement for stone shipped after July 25, but defendant ·

failed to pay these bills, and on September 9, 1907, plaintiff notified defendant that he could not make any further shipments of stone until such payment was made. There is due plaintiff $16.10 for hauling concrete machinery, at request of defendant, which labor was worth that sum. After allowing defendant credit for said sum paid by it on account of stone purchased in the open market in excess of the contract price, and for payment of the first bill, there is due plaintiff for stone furnished under such contract and not paid for, the sum of $1,788.20, with interest from August 25, 1907, and $16.10 for hauling machinery, plaintiff being entitled to recover in all the sum of $1,857.94.

Every statement in the finding of fact is supported by some evidence.

It is practically conceded by appellee that the proof did not substantiate the allegations of the first paragraph of complaint, and that if the judgment is upheld, it must be on the second paragraph, or common count.

1. Where one enters into a special contract to furnish materials to another, and furnishes the same, though not in the time or manner stipulated in the contract, and the other party accepts and uses it, the latter is liable to the amount of his benefit thereby, upon an implied promise to pay for value received. *Ricks* v. *Yates* (1854), 5 Ind. 115; *Wheatly* v. *Miscal* (1854), 5 Ind. 142; *Persons* v. *McKibben* (1854), 5 Ind. 261, 61 Am. Dec. 85; *Wolcott* v. *Yeager* (1858), 11 Ind. 84; *Adams* v. *Cosby* (1874), 48 Ind. 153; *Everroad* v. *Schwartzkopf* (1890), 123 Ind. 35, 23 N. E. 969; *Cleveland, etc., R. Co.* v. *Scott* (1907), 39 Ind. App. 420, 79 N. E. 226. That is, the one furnishing the materials can recover for the value of his materials less the damages occasioned by his failure to complete his contract.

2. But if he is prevented from completing the contract by the other party, he may recover for the materials furnished on the *quantum meruit,* not to exceed the contract price. *French* v. *Cunningham* (1898), 149 Ind. 632, 49 N.

E. 797. Appellant's counterclaim was in the nature
3. of a complaint against appellee for damages for
breaking the contract, and in order to be able to
recover on this counterclaim, it must show that there had
been no breach of the contract on its part. *Branham* v.
*Johnson* (1878), 62 Ind. 259; *Skehan* v. *Rummel* (1890),
124 Ind. 347, 24 N. E. 1089; *Ohio Valley Buggy Co.* v. *Anderson Forging Co.* (1907), 168 Ind. 593, 81 N. E. 574, 11
Ann. Cas. 1045.

Appellant contends that appellee broke his contract, that
he failed to furnish as much stone as appellant required him
to under the contract, and that on September 9, 1907,
4. he was ordered to furnish more stone, which he re-
fused to do; that appellant was greatly damaged by
refusal, and that appellee cannot recover on the common
count without paying to appellant the damages occasioned
by his failure to perform his contract. Appellee's conten-
tion is that appellant broke the contract. He urges that
appellee's failure at first to furnish as much stone as appel-
lant required was condoned by an arrangement made where-
by appellant was to bear with appellee, and purchase stone
needed in the open market, and when a time should come
that appellant could not use as much stone as appellee could
furnish, appellee was to bear with appellant. That such an
arrangement was made is supported by the evidence. Ap-
pellee further contends that the contract was broken by ap-
pellant's telegram directing appellee to ship no more stone
until further orders. We do not think so. The contract was
for the shipment of stone in quantities up to 150 cubic yards
per day, and appellant could fix the amount at anything
below 150 cubic yards. Appellant had borne with appellee
when he could not furnish all the stone required, in conform-
ity with the arrangement between them, and as his part of
the agreement, appellee was called on to bear with appellant
when appellant could not use all the stone he could furnish.
The use of the words "further notice" in the telegram would

imply an intention to give further notice and demand more stone. However, after sending the telegram above mentioned, if appellant did not give further notice within a reasonable time, such failure on its part would be a breach of the contract, for appellee could not be expected to hold himself in readiness to perform indefinitely, or for an unreasonable time. There is a conflict as to whether appellant made a demand on appellee to ship more stone. Appellant's witnesses testify that such a demand was made on September 9. Appellee testifies that appellant did not demand more stone, but qualifies this statement by saying that on September 9 appellant's officers did tell him they were ready for stone. He also testifies that he told them he would ship them more stone if they would pay for what they had had. We need not decide whether the statement of appellant's officers, to the effect that they were ready for stone, could be construed to be a demand, since appellant, according to the undisputed evidence, failed to pay appellee for the stone furnished under the contract at the time specified by that contract. We cannot construe the contract otherwise than that timely payment of the amount due appellee on monthly shipments was of the essence of the contract, and failure to make such payments was a breach on appellant's part which absolved appellee from further performance on his part. *Skehan* v. *Rummel, supra; Ohio Valley Buggy Co.* v. *Anderson Forging Co., supra.* Appellant having failed to make payments as required by the contract, appellee had a right to consider the contract broken, and to refuse to furnish more stone unless paid for that furnished, as he did, and to recover in this action for the reasonable value of the stone furnished, less the damages suffered by appellant on account of appellee's failure to supply the full amount needed before breach of the contract by appellant.

6. Appellant had no right to demand performance on appellee's part while itself in arrears. On this theory the court rendered judgment, and there is evidence support-

ing the judgment. It is contended that there is no
7. evidence that the stone was worth the price allowed
by the court, which was the contract price, but we
think the evidence on this point is sufficient, since the contract itself is *prima facie* evidence of the value of the stone
(*Wolcott* v. *Yeager, supra*), and since it is unquestioned
that stone of similar quality purchased elsewhere cost appellant much more than the contract price.

Judgment affirmed. Hottel, J., not participating.

NOTE.—Reported in 97 N. E. 946. See, also, under (1) 9 Cyc.
686; (2) 9 Cyc. 688; (3) 9 Cyc. 759; (4) 9 Cyc. 636, 646; (5) 9
Cyc. 642; (6) 9 Cyc. 603; (7) 40 Cyc. 2849. For authorities on
the question of rescission for failure to pay for installment as delivered, see 32 L. R. A. (N. S.) 1. As to the rescission of a contract
for the successive deliveries of goods on account of the nonpayment of an installment, see 3 Ann. Cas. 901. As to *quantum
meruit* on substantial performance of a building contract, see 134
Am. St. 678. As to acceptance of work as waiver of imperfect performance, see 115 Am. St. 256. As to the rights and remedies
generally of a seller on the buyer's breach of contract, see 133
Am. St. 563.