CHARLES TOPPERT, Plaintiff and Counterdefendant-Appellee, *v.* BUNGE CORPORATION, Defendant and Counterplaintiff-Appellant.

Third District   No. 77-549

Opinion filed June 2, 1978.—Rehearing denied July 5, 1978.

Nelson & Kilgus, of Morrison, for appellant.

Sidney S. Deutsch, of Deutsch and Deutsch, of Rock Island, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Charles Toppert instituted an action in the Circuit Court of

Rock Island County to recover damages for the failure of defendant Bunge Corporation to pay for 10,000 bushels of corn delivered to defendant Bunge by plaintiff, pursuant to a contract between the parties. Bunge filed a counterclaim seeking to recover damages for the alleged failure of plaintiff to deliver approximately 20,000 bushels of corn under the terms of two other contracts between the parties. Following a bench trial, the trial court found in favor of plaintiff and as against defendant on both the complaint of plaintiff and defendant's counterclaim. On appeal to this court, defendant argues (1) that the trial court's finding that four contracts between plaintiff and defendant were not separate and distinct but rather an "ongoing arrangement," was against the manifest weight of the evidence and (2) that the plaintiff was not entitled, under section 2—610 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 2—610), to suspend his performance on two outstanding contracts, on the contention that plaintiff's obligation to perform the two contracts was not excused by the fact that Bunge withheld payment on a prior contract which was fulfilled by plaintiff.

The record indicates that in 1973, plaintiff Charles Toppert was a farmer at Hillsdale, Illinois, and farmed approximately 1,000 acres. Plaintiff sometimes exchanged work with his father, Burdette Toppert, and his brother, Larry Toppert. Defendant Bunge Corporation owns and operates a grain elevator in Albany, Illinois. Defendant Bunge buys grain from farmers and from county grain elevators, both for immediate delivery and for delivery several months in the future. Many of defendant's grain purchases are initiated by telephone, when farmers call defendant's office and offer to sell grain for future delivery (based as to price on the current market price as established by the Chicago Board of Trade). At the close of a business day, defendant would normally type contract forms conforming to the agreements made during the day, and send two copies of the forms to the farmer who is producing the grain. The farmer is requested to keep one copy of the contract, and to sign and return the other copy to defendant Bunge. It appeared, also, that whenever defendant buys grain for future delivery, the contract is immediately negotiated to defendant's St. Louis office and then sold to an outside buyer.

At the end of March 1973, plaintiff Toppert placed calls to defendant's Albany office and made three contracts to sell corn, each contract covering 10,000 bushels and calling for delivery in October or November. The contracts were typed on forms number 0355, 0364 and 0366, respectively, and mailed to Toppert. Toppert signed and returned to defendant Bunge, one copy of each of these contracts. On or about May 15, 1973, plaintiff Toppert called defendant and entered into a fourth contract to sell 10,000 bushels of corn for delivery in October or

November. This contract was typed on form number 6079, and mailed to plaintiff. Plaintiff did not sign and return a copy of contract 6079 to defendant Bunge.

Plaintiff Toppert commenced making deliveries to defendant on November 2, 1973. On November 9, 1973, plaintiff Toppert completed delivery of contract number 0355 and commenced delivery on contract number 0364. It was defendant's normal policy to make payment at the time the contract was fulfilled by a farmer. Plaintiff, however, was not paid for his deliveries under contract 0355 until a demand was made by plaintiff's attorney, after which it was finally paid on November 20, 1973. Plaintiff Toppert continued making deliveries to defendant Bunge through the end of November, 1973. On November 28, 1973, defendant Bunge mailed plaintiff a letter extending the time of delivery under the remaining contracts to the end of December. On December 3, 1973, plaintiff completed deliveries under contract number 0364, and commenced delivery under contract number 0366. Defendant, however, refused to make payment to plaintiff on December 3, 1973, for the completed deliveries under contract 0364. Plaintiff, thereafter, made no deliveries after December 3, 1973.

In late November or early December, a meeting was held between plaintiff Toppert, plaintiff's father, plaintiff's brother, defendant's Albany office manager and defendant's district manager. At this time, apparently, defendant had four or five agreements with plaintiff's brother and father, for which contracts had not been signed and returned to defendant Bunge. At this meeting, defendant's representatives talked to plaintiff, his brother and father about getting the contracts signed. There was some discussion at this meeting regarding payment to plaintiff for corn delivered, but defendant's representatives refused to pay plaintiff at that time.

On January 2, 1974, defendant's representatives again met with plaintiff and his father. While most of the discussion apparently concerned the unsigned contracts which defendant had with plaintiff's father, plaintiff asked about payment on his contract which he had fulfilled, but got no action or response from defendant's representatives. On January 4, 1974, defendant Bunge notified plaintiff by letter that it was canceling the final two contracts and requested damages from plaintiff based on the "cover price."

Plaintiff filed his complaint on June 1, 1974, seeking recovery of the contract price for the corn delivered to defendant Bunge under contract number 0364. Defendant counterclaimed for damages under the unfilled contract numbers 0366 and 6079. As we have noted, the trial court, following a bench trial, found in favor of plaintiff on the complaint and also denied defendant's counterclaim. The court found specifically that

defendant Bunge had failed to deal in good faith in the transactions since, as established by the testimony of defendant's representative at the trial, defendant had held up payment for plaintiff's delivery under contract number 0364 to insure the continuing performance by plaintiff's brother and father under their contracts with defendant, as well as to use leverage on plaintiff for continuing performance. The trial court concluded that such activities on part of defendant Bunge constituted a wrongful refusal to pay, and that plaintiff was, therefore, justified in suspending his performance under the remaining contracts.

While appellant first asserts error in the trial court's finding that the four contracts between plaintiff and defendant were not separate and distinct, but rather were "ongoing arrangements" between plaintiff and defendant, we believe it is more pertinent to the basic issue in this case to consider the contention made by the defendant that it was error for the trial court to conclude that defendant's failure to pay plaintiff gave plaintiff the right to suspend his performance under the subsequent contracts.

■■■ We note, initially, that defendant Bunge has, in its reply brief, conceded that the withholding of payment on contract number 0364 was not legally justifiable. We note that section 2—301 of the Uniform Commercial Code—Sales (Ill. Rev. Stat. 1977, ch. 26, par. 2—301) provides:

> "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."

The evidence before the trial court, as well as the concessions made in this Court, establish clearly that defendant was obligated to pay for the deliveries under contract number 0364 on December 3, 1973, when deliveries had been completed under that contract. Defendant, however, did not make payment to plaintiff. Section 2—609(1) of the Uniform Commercial Code—Sales (Ill. Rev. Stat. 1977, ch. 26, par. 2—609(1)) provides:

> "A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return."

In Uniform Commercial Code Comment 1 to such section (Ill. Ann. Stat.) ch. 26, par. 2—609, UCC Comment 1 at 469 (Smith-Hurd 1963), it is stated that:

> "[t]he section rests on the recognition of the fact that the essential purpose of a contract between commercial men is actual

performance and they do not bargain merely for a promise, or for a promise plus the right to win a law suit and that a continuing sense of reliance and security that the promised performance will be forthcoming when due, is an important feature of the bargain."

In the instant case, when plaintiff delivered corn to defendant under contract number 0355, there was apparently a minor disagreement between the parties, and plaintiff was not paid for those deliveries until after plaintiff's attorney contacted defendant. When plaintiff subsequently delivered corn under contract number 0364 and when no payment was forthcoming from defendant, certainly reasonable grounds for insecurity arose with respect to defendant Bunge's future performance under contract numbers 0366 and 6079. As stated in Uniform Commercial Code Comment 3 to section 2—609 (Ill. Ann. Stat.) ch. 26, par. 2—609, UCC Comment 3, at 470 (Smith-Hurd 1963):

"* * * a ground for insecurity need not arise from or be directly related to the contract in question."

It is also noted that the Illinois Code Comment to section 2—609 cites as an illustration of reasonable grounds for insecurity "* * * the buyer's falling behind in his account with the seller under a different contract* * *."

■■ In the testimony before the trial court, defendant's district manager indicated that defendant withheld the amount due plaintiff under contract number 0364 as a wedge to force plaintiff to sign contract number 6079, and also to force plaintiff's brother and father to sign certain contracts with the defendant, so as to assure that all corn under those contracts was delivered. On the basis of the record in this case, we conclude that the trial court could properly determine that defendant's action in withholding payment to plaintiff as leverage against plaintiff's brother and father, in their dealings with the defendant, established a lack of good faith on the part of defendant Bunge in dealing with plaintiff Toppert.

■■ Plaintiff had demanded payment for deliveries under contract number 0364 when he completed deliveries under that contract, and defendant did not comply with that demand. At meetings among plaintiff, his brother, his father, and representatives of defendant, it became evident that defendant was withholding payment from plaintiff in order to force plaintiff, his brother and his father to sign certain contract forms with defendant and to assure delivery under those contracts. At these meetings, plaintiff continued to demand payment from defendant for deliveries under contract number 0364. Under section 2—609 of the Uniform Commercial Code, it is provided that upon reasonable grounds for insecurity a party "* * * may in writing demand adequate assurance of due performance* * *." The act of defendant's

withholding payment to plaintiff, defendant's lack of good faith in the transaction, by refusing payment to plaintiff to bring pressure on plaintiff's brother and father, justified plaintiff's refusal to perform further without payment by defendant Bunge. In light of the underlying purposes and policies of the Uniform Commercial Code, we believe that plaintiff's demands for payment operated as a demand for adequate assurance of defendant's performance under contract numbers 0366 and 6079. (*Cf. AMF, Inc. v. McDonald's Corp.* (7th Cir. 1976), 536 F.2d 1167.) Defendant's failure to make payment to plaintiff under contract number 0364 within a reasonable time was properly interpreted by the trial court as constituting a repudiation of contracts 0366 and 6079. Since defendant Bunge by its own actions repudiated contracts 0366 and 6079, the trial court properly found defendant was not entitled to damages for failure to deliver under those contracts.

When plaintiff completed deliveries under contract 0364, plaintiff was not in default on the subsequent contracts. Defendant's refusal to pay plaintiff and defendant's imposition of conditions beyond the scope of the contract 0364 were without legal justification and evidenced a lack of good faith on the part of defendant Bunge with respect to payment on that contract. Plaintiff was then justified in requesting adequate assurance of defendant's performance under contracts 0366 and 6079, specifically, by payment under contract 0364. Defendant's failure to comply with that request constituted, as the court has concluded, a repudiation of contract numbers 0366 and 6079. As the trial court indicated, defendant Bunge had no right of recoupment or set-off due to its own actions in failing to abide by its contractual obligations.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County should be, and is, affirmed.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.