**CHAMPION HOME BUILDERS CO.,**
Appellant (Plaintiff Below),

v.

**Leroy J. POTTS, Regina M. Potts, Town & Country Mobile Homes, St. Joseph County Treasurer, Midwest Commerce Banking Company, Valley American Bank & Trust Company, Offutt Publishing, Inc., and the State of Indiana,** Appellees (Defendants Below).

No. 71A03–8812–CV–378.

Court of Appeals of Indiana, Third District.

May 24, 1989.

Kennard R. Weaver and Timothy S. Shelly, Warrick, Weaver & Boyn, Elkhart, for appellant.

George V. Filippello, Mishawaka, for appellees.

STATON, Judge.

Champion Home Builders Company (Champion) appeals the trial court's judgment in favor of Leroy Potts and Town & Country Mobile Homes (collectively referred to as "Potts") on Potts' counterclaim for damages. This appeal raises two issues:

1. Whether Potts is entitled to damages for Champion's failure to deliver manufactured homes.
2. Whether Potts is entitled to sales incentive program credits pursuant to the preferred dealer agreement.

We reverse in part and remand with instructions.

Champion builds manufactured homes and Potts owned and operated Town & Country Mobile Homes. On January 28, 1985, and December 6, 1985, Potts and Champion executed Manufactured Home Distribution Agreements,[1] pursuant to which Champion sold manufactured homes to Potts for resale.

During an inventory check in March, 1986, Champion discovered that Potts had sold manufactured homes to consumers for which Potts had been paid, but Potts had not paid the credit company which financed his purchases. This practice is referred to within the industry as "selling out of trust." Champion paid the credit company the amount owed by Potts and Potts executed a promissory note to Champion for $130,000.00. This note was executed on

April 7, 1986, and was secured by a mortgage on a mobile home park owned by Potts.

In June, 1987, an inventory check disclosed that Potts had sold two more homes out of trust. The credit company made demand on Champion for the amounts owed and informed Champion it would no longer do business with Potts. Champion paid the credit company and was assigned its interest in Potts' account. Champion made demand on Potts for immediate payment of the homes sold out of trust. When Potts did not pay, Champion repossessed its remaining inventory on Potts' sales lot.

On August 24, 1987, Champion filed suit seeking foreclosure of the real estate mortgage because the promissory note was in default and seeking the amount owed on the account assigned to Champion. Potts filed an answer and a counter-claim for the discount program credits he had earned and for lost profits from Champion's refusal to deliver homes.

The trial court entered judgment for Champion on its complaint, but set off the amount of damages by the amount it awarded Potts on his counter-claim.

## I.

### *Failure to Deliver*

Champion first raises the issue whether Potts is entitled to damages for lost profits because Champion refused to deliver additional manufactured homes. Initially, we note that Potts did not file a brief. When only the appellant files a brief on appeal, we may reverse the trial court's judgment if the appellant makes a *prima facie* showing of reversible error. *Halliday v. Auburn Mobile Homes* (1987), Ind. App., 511 N.E.2d 1086, 1088.

Champion argues that Potts is not entitled to damages because Potts repudiated the dealership agreement. Ind.Code 26-1-2-703 provides, in part:

---

1. The agreements are identical as to their material clauses concerning this dispute. Those material clauses are referred to in this opinion

when reference to them is appropriate and when necessary for clarity.

Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or *repudiates with respect to a part or the whole,* then with respect to any goods directly affected *and, if the breach is of the whole contract* (IC 26-1-2-612), then also with respect to the whole undelivered balance, the aggrieved seller may:

(a) withhold delivery of such goods;

\* \* \* \* \* \*

(f) cancel

(Our emphasis.)

IC 26-1-2-612 provides:

(1) An "instalment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent.

\* \* \* \* \* \*

(3) Whenever non-conformity or default with respect to one (1) or more instalments substantially impairs the value of the whole contract there is a breach of the whole.

Thus, if Potts repudiated the distribution agreement, Champion was not required to make further deliveries of homes pursuant to the agreement. The distribution agreement provided that payment for the homes was to be made within ten (10) days after delivery or pursuant to the financing program Champion offered to qualified buyers. As noted above, Champion discovered on two separate occasions that Potts had sold out of trust. On both occasions, the credit company turned to Champion for payment. After the first time, Potts executed a promissory note to Champion but defaulted on the note. After the second time, Champion made demand for the payment but Potts was unable to pay. Thereafter, Champion cancelled the preferred dealership agreement and refused to deliver homes ordered by Potts unless Potts could pay cash on delivery. Potts could not pay cash and the orders were cancelled.

It has long been the general rule of law that when a buyer fails to make payments according to the terms of an agreement, the buyer cannot recover damages for the seller's refusal to perform. *Skehan v. Rummel* (1890), 124 Ind. 347, 24 N.E. 1089; *Cullen–Friestedt v. Turley* (1912), 50 Ind. App. 468, 97 N.E. 946, *reh. denied.* Under the UCC, the buyer's failure to make payment in accordance with the installment contract constitutes repudiation of the contract which, pursuant to § 2-703, excuses the seller from further performance. *United States v. Geupal Construction Co.* (7th Cir.1970), 423 F.2d 818, 7 UCC Rep. 446; *Toppert v. Bunge Corp.* (1978), 60 Ill.App.3d 607, 18 Ill.Dec. 171, 377 N.E.2d 324. The buyer's failure to make payments in accordance with the dealership agreement also justifies the seller in cancelling the agreement. *Camfield Tires v. Michelin* (8th Cir.1983), 719 F.2d 1361.

Champion has made a *prima facie* showing that Potts repudiated the dealership agreement by failing to make payments in accordance with its terms. Therefore, Potts is not entitled to recover lost profits from the sales of manufactured homes that Champion refused to deliver.

We reverse the trial court's judgment awarding damages to Potts for lost profits.

## II.

### *Discount Credits*

Champion next raises the issue whether Potts is entitled to the sales incentive discount credits pursuant to the dealership agreement. Champion argues that Potts is not entitled to the credits because the agreement was terminated before Potts had earned the credits. The relevant portion of the agreement provides:

(c) Buyer shall be permitted to participate in Seller's Competitive Discount Program. Under Seller's Competitive Discount Program, Buyer shall be eligible for a competitive Discount equal to two (2) percent of Buyer's Eligible Sales Volume for each of Seller's fiscal years, payable as follows:

(ii) *Buyer shall be deemed to have earned each such annual credit* to the Competitive Discount Reserve Account

*as of the last day of Seller's fiscal year in which the initial four year term of this Agreement expires* as provided in Paragraph 7 hereof.... Notwithstanding the foregoing, in the event this AGREEMENT is terminated for any reason prior to its expiration as provided in Paragraph 7 hereof....: (A) Buyer may withdraw, as provided in subsection (iii) below, any credits made to the Competitive Discount Reserve Account which were earned prior to such termination; and (B) *all credits* made to the Competitive Discount Reserve Account *which were not earned prior to such termination shall be cancelled and removed from such account and Buyer shall have no right to earn or receive any payment relating thereto.*

(R. 354–55.)  (Our Emphasis.)

The initial term of the agreement was not due to expire until 1989. According to the agreement Potts would not earn his credits until the last day of Champion's 1989 fiscal year. Champion terminated the agreement in 1987, before Potts' credits were deemed "earned". Thus, by the terms of the agreement, Potts was not entitled to these credits.

However, Potts also counter-claimed for credits due him under Champion's Dollar–Volume Discount Program. Unlike the competitive discount program, the volume discount credits were paid to the dealer at the end of each fiscal year. The agreement does not indicate that the discounts were not "earned" until the end of the fiscal year, or that the dealer had to be a preferred dealer at the end of the fiscal year before collecting any credit earned prior to termination of the agreement. Thus, the record does not support Champion's argument that Potts was not entitled to the volume discount credits he earned on sales from March 21, 1987 through June of 1987.

We reverse the judgment of the trial court awarding damages to Potts for lost profits and for credits earned under the competitive discount program. We remand with instructions to determine the amount owed to Potts under the volume discount program only.

Reversed in part and remanded with instructions.

GARRARD and SHIELDS, P.JJ., concur.